## GEO. D. BARNARD & Co. *v.* KNOX COUNTY.

*(Circuit Court, E. D. Missouri, N. D February 6, 1889.)*

1. COUNTIES—WARRANTS—EXCEEDING STATUTORY LIMIT OF INDEBTEDNESS.

In order to defeat an action on county warrants, by invoking Const. Mo. art. 10, § 12, providing that "no county * * * shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year. without the assent of two-thirds of the voters." etc., it is not sufficient to show merely that during the years in which the warrants sued on were issued the expenditures ex-. ceeded the county revenues for those years, but it must be shown, in addition. that the limit had been reached before the indebtedness was incurred for which the warrants were issued.

2. SAME—COMPULSORY INDEBTEDNESS.

Rev. St. Mo. §§ 623, 624, 1061, 1184, 5376, having made it the duty of the various county officers to provide suitable books and stationery at the expense of the county for the transaction of business in their offices. debts contracted for such purposes by those officers and not by the county court, the ordinary contracting agent of the county, are not within the purview of the constitutional provision above quoted.

At Law. Agreed case.

*Taylor & Pollard,* for plaintiff.

*G. R. Balthrope* and *W. C. Hollister,* for defendant.

THAYER, J. This is an action on 49 county warrants, issued during the years from 1882 to 1886, both inclusive, in payment for books and stationery sold and delivered to Knox county at the instance and request of various county officers, and for public use. The defense is that when the warrants sued upon were issued by the county court of Knox county, the county court had drawn warrants in excess of the total revenue of the county for the years during which the warrants were respectively issued, and that the debt sued for was for that reason contracted in violation of section 12, art. 10, Const. Mo., which provides that "no county * * * shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose." The case has been submitted upon an agreed statement of facts, from which it appears that the books and stationery in question were furnished for public use at the instance and request of the probate judge, the clerks of the county and circuit court, and the sheriff and collector of the county, and that the same "were suitable and necessary for the officers in their official capacity to whom they were sold." It also appears that the total warrants issued by Knox county each year from 1882 to 1886, both inclusive, exceeded the revenue derived for the respective years from the highest rate of taxation which the law permits, to-wit, 50 cents on each $100 of valuation; but that, deducting the warrants drawn on the "pauper fund" and "road and bridge fund," the warrants drawn in any one of said years did not exceed the revenue for said year. Judgment must be rendered for the plaintiff for the full amount claimed in each count, (that is, for the amount of the warrant described therein and interest at 6 per cent. per annum from the date of the alleged presentation,) for two reasons:

In the first place, there is nothing in the agreed statement to show that the indebtedness sued for was illegally contracted, even if it be conceded that the constitutional inhibition (section 12, art. 10, *supra*) applies or has reference to such an indebtedness. The only fact admitted by the agreed case is that warrants were issued each year from 1882 to 1886, inclusive, in excess of the total county revenue for the respective years, provided warrants drawn on the "pauper and road and bridge funds" are taken into account, and not otherwise. But whether, when the several items of indebtedness sued for were contracted, and the various warrants were drawn, the limit of legal indebtedness had then been reached, and the county had exhausted its power to contract further indebtedness, is not shown. The stipulation falls short of establishing the facts alleged in defendant's special plea. In this state, as is well known, county courts are required to subdivide the total county revenue into five different funds, and each fund must be devoted to the payment of the particular class of expenses for which it is set apart, and to no other. Warrants drawn by the county court must also specify the fund on which they are drawn. Rev. St. Mo. §§ 6818–6821, both inclusive. By section 5370, county treasurers are required to keep a record of warrants presented against the respective funds, and to pay them out of the funds on which they are drawn in the order of presentation, with the proviso that warrants issued to pay for "services that are usual, and for all expenses necessary to maintain the county organization," must be paid in preference to warrants that are otherwise drawn; that is, to pay for services or expenses that are of an unusual character. It is evident, therefore, that when a county incurs an indebtedness exceeding its income or revenue for the year, and some part of it is for that reason invalid, it must be that part (if any) which may be appropriately termed an "extraordinary indebtedness," or that part which was contracted after the limit of legal indebtedness had been reached. The debt sued for in this case was not an unusual debt for a county to contract. On the contrary, it was an obligation such as the county was compelled to incur annually. Its officers could not discharge their official duties without suitable books and stationery. Therefore it is important to know when the various items of indebtedness sued for in this case were contracted, and to what extent the county had incurred liabilities up to that time. Without such proof—and the agreed case is silent on that point—the court cannot say that the county had exhausted its power to incur further debts, when a single item of the bill sued for was sold and delivered. It will certainly not be presumed that the defendant contracted a debt in violation of law. The burden of showing such fact rests on him who alleges it.

In the second place, it must be held that the indebtedness now under consideration is not within the purview of the section of the constitution above quoted, (section 12, art. 10,) because it was an indebtedness which the various county officers who contracted it were bound to incur in the proper discharge of their official functions. It is made the duty of the various officers at whose instance the books and stationery involved in this case were supplied "to provide suitable books and stationery" at the expense of the county for the transaction of business in their several of-

fices. Rev. St. Mo. §§ 623, 624, 1061, 1184, 5376. The debt was contracted by those officers, and not by the county court. In the case of *Potter* v. *Douglas Co.*, 87 Mo. 240, it was held that the constitutional prohibition now in question was leveled against a county becoming indebted through the action of the county court,—the ordinary contracting agent of the county,—and that it had no application to an obligation cast on the county for the transportation of a prisoner to an adjoining county, and for his board while there confined in jail, inasmuch as the law made it the duty of the sheriff to take prisoners to an adjoining county, and there confine them, when there was no jail in the county where the offense was committed. In *Rollins* v. *Lake Co.*, 34 Fed. Rep. 845, Judge BREWER held that a provision in the constitution of the state of Colorado, very similar to the one now under consideration, did not forbid a county of that state from becoming indebted for witness', juror's, and sheriff's fees, in excess of the amount limited by the constitution, because the laws of the state made it obligatory on counties to pay all such fees. It seems, therefore, that it is settled, both in this state and in this circuit, that constitutional provisions limiting the amount of county indebtedness that may be incurred are to be construed as having reference to that class of debts which it is optional with the county court or other governing body of the county to incur, and that they are not to be taken as having reference to compulsory obligations cast on the county by operation of law, as where a county is required to pay the ordinary expenses attending the maintenance of courts and the enforcement of the laws within the county, or where particular officers are required to provide at the expense of the county the necessary supplies for the proper discharge of the duties of their office. As experience has heretofore shown that counties and municipalities generally become embarrassed by lavish expenditures which they were under no legal obligation at the time to make, or that might at least have been deferred to a more convenient season, the construction adopted in the cases above cited is reasonable, and will most likely result in accomplishing the purpose had in view by the law-maker. Judgment will accordingly be entered for the plaintiff.