SHANNON *et al.* v. STATE *ex rel.* DAVIDSON *et al.*

No. 3697.   Opinion Filed March 26, 1912.

Rehearing Denied July 18, 1912.

(125 Pac. 1106.)

COUNTIES—Indebtedness—Allowance of Claims.   By virtue of section 9 of an act of the Legislature entitled "An act relating to the issuance of warrants or certificates of indebtedness," etc. (Sess. Laws 1910-11, p. 180), the board of county commissioners is without authority to allow and approve a claim against any fund of the county, or to order a warrant therefor issued on such fund, where, during the fiscal year in which the claim is presented, claims have already been allowed and approved on such fund equal to the estimate made and approved by the excise board for such fund for the current fiscal year; and this is true, although there be to the credit of such fund a balance unexpended, derived from the taxes and revenues collected during the preceding year.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Mandamus, on the relation of Holmes Davidson and another, against L. O. Shannon and others. Judgment for relators, and defendants bring error. Reversed and remanded, with directions.

*W. Morris Harrison,* for plaintiffs in error.

*McDougal & Lytle,* for defendants in error.

HAYES, J. This action was brought in the court below, on relation of defendants in error, Holmes Davidson and Theodore Berryhill, as guardian of Earl Berryhill, who will be hereafter referred to as relators, to compel by mandamus plaintiffs in error, constituting the board of county commissioners of Creek county, to approve certain claims of relators against the county, and to order warrants drawn therefor.

The judgment of the trial court sought to be reversed by this proceeding awarded the peremptory writ as prayed for by relators. The trial in the court below was upon an agreed statement of facts, which, in so far as they are material to the question presented by this appeal, are as follows:

Relator Holmes Davidson is the county jailer of Creek county and has in his care and custody the state and county prisoners confined in the county jail, and is charged with the duty of boarding and keeping them. The county, it is admitted, is indebted to him for the board of the prisoners in the sum of $363; that relator has rendered and filed his account therefor in due form, as required by law. It is admitted that said claim is correct and due by the county, and is a proper charge against the contingent fund of the county; but the board of county commissioners refused to allow said claim, and to order a warrant issued therefor, for the reason that the estimate approved and allowed by the excise board for the fiscal year 1911-12 for the contingent fund was exhausted. Relator Earl Berryhill is the owner of a building rented and occupied by the county, and it is admitted that the county is indebted to him as rents thereon in the sum of $780; that an account therefor has been duly made and presented to the

board of county commissioners for the allowance; that said claim is a just charge against the court fund of the county, but that the county commissioners refused to allow said claim, for the reason that the estimate approved and allowed by the excise board for the court fund for the fiscal year 1911-12 has been exhausted. Although warrants have been drawn against the contingent and court funds of the county in an amount equal to the estimate made and approved for said funds for the fiscal year 1911-12, it is admitted that there is a balance on hand in the county treasury to the credit of the contingent fund in the sum of $1,062; and a balance to the credit of the court fund in the sum of $24,000, which said sums were paid into the treasury as taxes under the levy made for the fiscal year 1910-11; and that all charges against said funds for the fiscal year 1910-11 have been paid.

The sole question presented by the record in this proceeding is whether, under the provisions of an act of the Legislature approved March 15, 1911, entitled "An act relating to the issuance of warrants and certificates of indebtedness," etc. (Sess. Laws 1910-11, p. 180), the board of county commissioners is authorized to allow claims against any fund in any fiscal year in excess of the estimate made and approved for such fund for said year, by reason of the fact that there is cash on hand in the treasury to the credit of such fund left over from the taxes levied and collected during the preceding year. Section 2 of the act makes it the duty of every officer authorized to allow, issue, or draw warrants against the public funds of any county to number them in their numerical order as they are issued on each fund, beginning with number 1, and issue them consecutively each fiscal year; and the series for each year is required to be designated by writing the fiscal year on the warrant for which the levy to pay same has been made.

Section 4 requires that:

"Each and every warrant or certificate of indebtedness must be drawn against a specific fund, and there shall be shown on such warrant or certificate of indebtedness by the officer or person issuing, drawing, or attesting same, the amount of the estimate made and approved for such purpose for the fiscal year or the specific

amount authorized by a bond issue for said purpose; the amount of warrants or certificates of indebtedness issued or drawn against said fund and the net balance to the credit of said fund."

Section 6 provides that:

"Warrants and certificates of indebtedness may be issued to the amount of the *estimate made and approved by the excise board for the current fiscal year* or to the amount authorized for such purpose by a bond issue." (Italics ours.)

Section 7 makes it unlawful for any officer to issue, approve, sign, attest, or register any warrant or certificate of indebtedness in any form in excess of the estimate of expenses made and approved for the current fiscal year, and renders a warrant so issued invalid against the county, and makes the officer issuing same and his bondsmen liable therefor.

Section 9 reads as follows:

"It shall be unlawful for the board of county commissioners, the city council or the commissioners of any city, the trustees of any town, board of education, township board, school district board or any member or members of the aforesaid commissioners, or of any of the above-named boards, to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue. Any such indebtedness, contracted, incurred, acknowledged, approved, allowed or authorized in excess of the estimate made and approved for such purpose for such current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue, shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed or authorized or attested the evidence of said indebtedness, but may be collected by civil action from any official contracting, incurring, acknowledging, approving or authorizing or attesting such indebtedness, or from his bondsmen."

It is plain that the foregoing section makes it unlawful for respondents in this case to approve the claims of relators, unless the term "estimate made and approved" for any current fiscal year includes a balance left over to the credit of any fund from the taxes collected during a previous year, but that the term "estimate made and approved" has no such meaning seems clearly

to be foreclosed by other provisions of the act; for the Legislature has, by section 3, defined this term in the following language:

"The term 'estimate made and approved' as used herein is defined to mean the itemized statement of the estimated needs of a municipality for its current expenses for the ensuing fiscal year, as approved and fixed by the excise board or by vote of the municipality, adding thereto the amount necessary to create a sinking fund to meet maturing bonds, judgments and interest coupons, but the amount or limit to which warrants and certificates of indebtedness may be issued, shall not include the ten per cent. to be added to the estimate for the delinquent taxes."

Applying this definition to the language in section 9, it is plain that the effect of that section is to limit the approval of claims by the board of county commissioners, not to the amount of funds that may be in the treasury at any time, or that may be received into the treasury during any fiscal year, but to the estimate of expenses made and approved by the excise board for that year. In other words, when a claim is presented to the county commissioners, in order for them to determine their authority relative to approving same, they are required to look, not to the condition of the account in the treasury, but to the amount of the estimate made and approved by the excise board, and the total amount of warrants or certificates already drawn against the fund for that year. If the amount of warrants previously drawn during the fiscal year, including the claim presented, does not exceed the amount of the estimate made and approved for that year by the excise board, the claim may be approved and a warrant ordered issued; but, if the amount of warrants previously issued, including the claim presented for allowance, exceeds the estimate made and approved for the fund against which the claim is a charge for any year, then there is nothing in the statute that authorizes the board to allow same, although there may be money in the treasury credited to such fund for previous years, but not exhausted by the charges against the fund for said years. To sustain relators' contention that the board of county commissioners are under duty to allow their claims because of the balance in the fund, derived from the taxes of a previous year, would be to extend the meaning of the terms of this statute as specifically

defined ·by the statute itself. It is apparent that the Legislature intended that the terms of the statute should have a definite, fixed,. unmistakable meaning, requiring no construction, because the statute has defined them, and has made the officers who violate the statute by approving claims or drawing warrants in excess of the amount authorized thereby liable personally for such warrants. or claims, and subjects them to prosecution for misdemeanor, and upon conviction to a fine of not less than $100 nor more than $1,000, and a forfeiture of their office.

Section 3 of an act of the Legislature entitled "An act to· provide for the levying of taxes on *ad valorem* basis," etc., approved March 17, 1910 (chapter 64, p. 109, Sess. Laws 1910),. creates in each organized county in the state an excise board, to be composed of the county clerk, county treasurer, county judge,. county superintendent, and county attorney, who shall perform the duties thereinafter provided.

Section 4 makes it the duty of the excise board to meet at the county seat on the last Saturday in July of each year, for the purpose of examining the estimates of expenses of the county and for each city and incorporated town, township, and school district in the county, and to revise and correct any such estimate, where the amount thereof is in excess of the just and reasonable needs of the municipality for which same is made; and when they have approved each estimate, if the same is within the limits for current expenses provided for by section 1 of the act, said board shall then ascertain the assessed valuation of property taxed *ad valorem* in the county, and then shall ascertain the probable income of the county and of each municipality or division thereof, other than *ad valorem* taxes, and then they shall make a levy sufficient to· meet the expenses of the current year as approved in said estimates, and additional amounts necessary to provide a sinking fund to pay at maturity all bonded indebtedness of the county. Added to this amount, there shall be levied 10 per centum additional for delinquent taxes.

We think the Legislature by this section intended to provide, and does provide, that the excise board, in arriving at what amount of taxes shall be necessary to be levied in any year upon *ad*

*valorem* basis in any county, shall first ascertain the probable income of the county for that year from all sources, including any balance that may be available from the revenues collected by the county during the preceding year or years unexpended; that such total income from all sources shall then be deducted from the estimate approved and allowed for the current year, and a sufficient levy of taxes upon *ad valorem* basis shall then be made by the board to raise the additional sum necessary under the estimate approved, unless such amount shall require a rate exceeding the rate fixed by the statute. The excise board may consider at such time the balance to the credit of any fund in the county treasury, for the purpose of determining the amount of taxes necessary to be levied; but when the board of county commissioners is called upon to approve or allow any claim against any fund of the county, or any officer, whose duty it is to issue a warrant when such claim is allowed, is called upon to issue such warrant, they may look only to the estimate made and approved by the excise board, and to the amount of claims allowed or warrants already issued thereunder during such fiscal year, to determine whether they are authorized to approve the claim, or to issue a warrant therefor. This view seems to us to be in entire harmony with the purpose of both the foregoing acts of the Legislature, and to be the only procedure authorized by the plain language of the statute; and to give it any other meaning would be to legislate additional language into a statute whose language is not sufficiently ambiguous to require construction.

We are not unaware that this rule may operate to embarrass the administration of affairs in some counties, where the estimates made and approved by the excise board have proven insufficient to meet the expenses of the county; but it is an embarrassment that flows from the operation of the plain letter of the statute, and the courts are not justified in going beyond the law expressed in a plain statute, although to do so might relieve a difficult situation.

The validity or constitutionality of the act involved has not been questioned.

It follows from the foregoing views that the judgment of the trial court should be reversed and the cause remanded, with directions to dismiss.

TURNER, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., absent, and not participating.