**SMART, Sheriff, v. BOARD OF COUNTY COM'RS OF CRAIG COUNTY.**

No. 7737—Opinion Filed Dec. 11, 1917.

(Syllabus.)

**Counties — Liabilities — Sheriff's Fees and Expenses—Limitation of Indebtedness.**

Moneys lawfully expended by a sheriff in the feeding of prisoners and fees earned by him in the discharge of duties imposed upon him by the Constitution and laws of the state constitute a valid charge against the county, and are not within the limitations imposed upon the county by section 26, art. 10 (section 291, Wms. Anno.) Constitution.

Thacker, J., dissenting.

Error from District Court, Craig County; Preston S. Davis, Judge.

Action by L. P. Smartt, Sheriff of the County of Craig, against the Board of County Commissioners of the County of Craig, State of Oklahoma. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

W. H. Kornegay, for plaintiff in error.

Willard H. Voyles, for defendant in error.

HARDY, J. L. P. Smartt, sheriff of Craig county, commenced this action against the board of county commissioners of Craig county to recover judgment on claims against said county to the amount of $282.34 for the board of prisoners, etc., payment of which had been refused on the ground that the revenue provided for such purposes for the fiscal year, during which said claims arose, had been exhausted prior to the accrual or presentation thereof. Judgment was for the county and plaintiff appeals. The case was submitted to the trial court on an agreed statement of facts, from which it appears that the claims were chargeable to and payable out of the contingent fund for the fiscal year 1912-1913; that the estimate of the contingent fund for said year was $5,000, the assessed value of said property for said county was $15,178,000, and that a levy of .36 mills was regularly made to produce $5,000 and 10 per cent. additional for delinquent taxes, and that on and prior to May 5, 1913, legal claims had been filed against said funds and had been regularly audited and allowed in the sum of $4,998.53, for which warrants had been issued on and prior to May 5, 1913, and that the services covered by said claims were rendered and performed prior to the services represented by the claims of plaintiff; that three-fifths of the voters of said county voting at an election held for that purpose had not during said fiscal year and prior to February 20, 1915, assented to the county becoming indebted for any purpose to an amount exceeding in said fiscal year the income and revenue of said fund for said year.

It is contended that the claims presented by plaintiff constitute no valid charge against the county, and therefore the judgment in his favor was erroneous. This contention was based upon the application of section 26, art. 10 (section 291, Wms. Anno.) Const., which provides:

"No county * * * shall be allowed to become indebted, in any manner, or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. * * *"

It is the clear intention of this provision that counties shall not be allowed to become indebted except in the manner provided, and if the claims of plaintiff come within its terms the judgment was erroneous. We do not think, however, that such claims are affected thereby. Section 18,

art. 25 (section 382, Wms. Anno.) Const., is as follows:

"Until otherwise provided by law, the terms, duties, powers, qualifications, and salary and compensation of all county and township officers, not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers. * * *"

Section 2 of article 17 (section 320a, Wms. Anno.) Const., creates subject to change by the Legislature certain offices for each organized county, including the office of sheriff, and his duties, salary, and compensation were fixed by section 18, art. 25, according to the duties, salaries, and compensation performed and enjoyed by sheriffs at the time the Constitution was adopted. Referring to section 2995, Wilson's Rev. & Ann. Stats. 1903, we find the rate of compensation allowed the sheriff for services of the character herein involved and the rate therein fixed continued until changed by section 3197, Rev. Laws 1910, which made some unimportant changes in the rate of compensation for such duties, and by virtue of the change, the sheriff is entitled to receive compensation under the provisions of said law as changed unless prevented by section 26, art. 10. It is clear from the nature of the claims presented that the services were rendered in the discharge of plaintiff's duty as sheriff, and some of those duties he could neglect only at grave peril to himself. The keeping of prisoners confided to his custody is enjoined upon him by law, and should he refuse to receive any person as a prisoner he would by section 2245, Rev. Laws 1910, be guilty of a misdemeanor, and if, after receiving any such prisoner in his custody, he should willfully or carelessly allow such prisoner to escape or go at large except as might be permitted by law, he would, under section 2244, be guilty of a felony and subject to prosecution therefor. So we have this situation: An officer compelled to perform at his peril certain duties which involve the expenditure of his private funds and subject to imprisonment for a failure to do so is penalized by being denied compensation therefor.

It may be contended with some show of reason that section 26, art. 10, taken alone, would bear the construction urged, but it is a fundamental rule of construction that to determine the meaning and scope of one provision it must be read in the light of and with due regard for other provisions. In re Application of State to Issue Bonds to Fund Indebtedness, 33 Okla. 797, 127 Pac. 1065.

The very purpose of creating a state government by the people is to delegate thereto the performance of certain functions looking to the common safety and welfare, and the necessity for the performance of these functions through the agency of the state and its various subdivisions is the sole object for its creation. The people have provided in the Constitution for a full set of state officers, and have created separate departments and co-ordinate branches of the government and various municipal subdivisions, and confided to each the performance of certain duties which are made mandatory because necessary for the protection and well-being of the people composing the state. There has been much controversy among publicists and thinkers and much conflict in the decisions of the courts as to the proper and necessary limitations upon the powers delegated to the different departments and arms of the state government, but it is conceded by all that certain necessary fundamental functions must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them, among which are the right to life, liberty, the possession of property, and the pursuit of happiness, and should the state become so impotent as to be unable to discharge these functions, there would result a failure of the purposes for which government was established. The surest way to bring about this result is to construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other. If we give the Constitution such construction the enforcement of laws for the regulation and protection of the public peace and safety in any county might, in its ultimate analysis, depend upon the whim and caprice of certain local officials who might, by failing and refusing to make proper provision therefor, render it impossible to secure an enforcement of such laws by the officers charged with the duty of so doing. The items embraced in plaintiff's claim, being incurred in the necessary discharge of his duties imposed upon him by the imperative mandate of the law, are not within the limitation imposed by section 26, art. 10. A similar question was presented in Re Application of the State to Issue Bonds to Fund Indebtedness, supra. That was an application by the state to determine the

existence, character, and amount of the legal outstanding indebtedness of the state, and to issue funding bonds therefor. Warrants were issued from time to time during the fiscal year, ending June 30, 1911, in payment of the ordinary, current expenses of maintaining the state government pursuant to valid legislation, for which provisions had been made by the levy of taxes which in addition to the revenues expected to be derived from other sources was believed to be sufficient to meet the ordinary, current expenses for which the warrants were drawn. It is true in that case that the warrants were within the amount appropriated, while here the claims exceed the estimate made by the board of county commissioners, but the case is in point in principle because by section 23, art. 10 (Wms. Anno.) Const., the state was prohibited from contracting debts on account of deficits or failures in revenue to exceed at any one time $400,000, and it was contended that the warrants which amount to something in excess of $2,000,000 were void because issued in violation of said section 23, art. 10. The limitations imposed by that section were held not to apply to that class of pecuniary obligations arising out of the ordinary, necessary current expenses of maintaining the state government which were otherwise legal and valid.

Similar provisions have been construed in other states by the courts of last resort, holding that the ordinary expenses of maintaining a county and municipal government are not within the limitation of constitutional provisions such as section 26, art. 10.

Section 18 of article 11 of the California Constitution is as follows:

"No county, city, town, township, board of education or school district shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided [for it] for such year, without the assent of two-thirds of the qualified" voters, etc.

The Supreme Court of that state in Lewis v. Widber, 99 Cal. 412, 33 Pac. 1128, held that this clause of the Constitution referred only to an indebtedness or liability which one of the municipalities mentioned had itself incurred, and did not include a liability for the salary of a municipal officer whose office had been created and salary fixed by the statute.

Section 6, art. 8, of the Constitution of Washington provides:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, * * * without the assent of three-fifths of the voters therein voting at an election * * * for that purpose. * * *"

In Rauch v. Chapman, 16 Wash. 568, 48 Pac. 253, 36 L. R. A. 407, 58 Am. St. Rep. 52, the court reviewed the authorities upon this question and reached the conclusion that said provision did not apply to fees of witnesses in criminal cases and to fees of sheriffs for serving criminal process or to the expenses of the general state election, since both of the former were necessary under the Bill of Rights of that state, and the latter was necessary under another provision of the Constitution providing for such elections. Duryee v. Friars et al., 18 Wash. 55, 50 Pac. 583; Hull v. Ames, 26 Wash. 272, 66 Pac. 391, 90 Am. St. Rep. 743; Gladwin v. Ames, 30 Wash. 608, 71 Pac. 189; Pilling v. City of Everett, 67 Wash. 109, 120 Pac. 873; Farquharson v. Yeargin, 24 Wash. 549, 64 Pac. 717.

Section 12 of article 10 of the Constitution of Missouri prohibited any political corporation or subdivision of the state from becoming indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue for such year without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose. The Supreme Court of that state in Potter v. Douglas County, 87 Mo. 239, held that this provision had no application to a debt incurred by the county for the keeping and transportation of its prisoners by the sheriff or jailer to another county under the provisions of the statute then in force.

In Grant County v. Lake County, 17 Or. 453, 21 Pac. 447, the Supreme Court of Oregon construed the constitutional inhibition of that state that no county should create any debts or liabilities which should singly or in the aggregate exceed the sum of $5,000, except to suppress insurrection or repel invasion, and held that such provision only applied to debts and liabilities which a county in its corporate character and as an artificial person voluntarily created, and did not include such debts and liabilities as were imposed upon them by law. Eaton v. Mimnaugh, 43 Or. 465, 73 Pac. 754.

Section 157 of the Constitution of Kentucky provides:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose. * * *"

And this provision has been construed as not applying to claims other than those which the municipality might incur of its own volition. In other words, that it did not include expenses necessary for the maintenance of the municipal government. O'Bryan v. Owensboro, 113 Ky. 680, 68 S. W. 858, 69 S. W. 800; Hopkins County v. St. Bernard Coal Co., 114 Ky. 153, 70 S. W. 289.

Section 5 of article 11, Constitution of Texas, prohibited any city from creating any debt unless at the same time provision was made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon, and it is held by the Texas courts that a debt contracted by a city for current expenses was not within the class of debts contemplated by that section of its Constitution. Dwyer v. Brenham, 65 Tex. 526; City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; Biddle v. Terrell, 82 Tex. 335, 18 S. W. 691.

Other decisions, under similar constitutional and statutory provisions, holding the views herein expressed, are as follows: Sackett v. New Albany, 88 Ind. 473, 45 Am. Rep. 467; Thomas v. Burlington, 69 Iowa, 140, 28 N. W. 480; Leonard v. Long Island, 20 N. Y. Supp. 26; McGrath v. Grout, 171 N. Y. 7, 63 N. E. 547; Upton v. Strommer, 101 Minn. 97, 111 N. W. 956; Barnard v. Knox Co. (C. C.) 37 Fed. 563, 2 L. R. A. 426; Laycock v. City, 35 La. Ann. 479; State v. New Orleans, 37 La. Ann. 13.

The Constitution of Colorado (section 2, art. 11) contained a similar provision which was construed by the Supreme Court of that state to be absolute. People v. May, 9 Colo. 80, 10 Pac. 641. This construction was also given to the Constitution of that state by the Supreme Court of the United States in Lake County v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. This has led to some curious makeshifts by the Legislature of Colorado which has been approved by the Supreme Court of the state. Following the opinion of the Supreme Court of the United States in Lake County v. Rollins, supra, the Supreme Court of Missouri in Barnard & Co. v. Knox County, 105 Mo. 382, 16 S. W. 917, 13 L. R. A. 244, in effect, overruled its former opinion in the case of Potter v. Douglas County, supra.

It is evident from the conflicting constructions which have been placed upon similar provisions that it is possible to give different meanings and effect thereto, and in this situation we are required to apply the rules of judicial determination that prevail in such situation, and the rule applicable here is that effect must be given if possible to each and every clause of the Constitution, and it should be the aim of the court to adopt a construction which will render every provision operative, for it is scarcely conceivable that any portion of the Constitution was not intended to have some operation and effect. The Constitution did not create the state, but, on the contrary, is, itself, a creature of the people and the instrument of their convenience designed for their protection and to secure enjoyment of the rights and powers which they possessed before the Constitution was written, and is merely the concrete expression of the will of the people based upon the pre-existing condition of laws, rights, habits, and modes of thought which had prevailed, and was an enumeration of certain fundamental principles that should continue thereafter. Cooley's Constitutional Limitations, 37-58.

In addition to the protection of life, liberty and property and the conservation of the public peace, health, and safety, there are certain other functions of government which are elementary and indestructible, such for example as the administration of justice in the courts and the maintenance of a public school system for the education of all the children residing within the state; and to permit the performance of these mandatory duties to depend upon the making of provision therefor by certain subordinate municipal officers would render the life of the state and the security of the citizen precarious indeed. In many instances the amount necessary for a proper performance of such duties could not be reasonably foreseen, for it is not always possible to tell in advance how much will be required. The net result of the decisions holding that constitutional provisions such as article 10, § 26, do not apply to those liabilities which are not voluntarily incurred by the municipality is that they are careful to limit the application of the rule to those liabilities which are imposed upon the municipality by the superior power of the sovereignty as expressed in the Constitution or valid acts

of the Legislature. The items claimed were earned by plaintiff in the performance of duties imposed upon him by the state in which he had no discretion, and were not included within the limitations of article 10, § 26.

The judgment of the trial court in Re Application to Issue Bonds, supra, was reversed and the case again reached this court (40 Okla. 145, 136 Pac. 1104, Ann. Cas. 1916E, 399), where the rule announced upon the original appeal was adhered to. In Campbell et al. v. State et al., 23 Okla. 109, 99 Pac. 778, plaintiff sought to enjoin the board of county commissioners and the county clerk of Washita county from issuing certain warrants in payment of semiannual installments upon a written contract for a courthouse, and it was held that section 2, art. 8, c. 32, Session Laws of Oklahoma 1897, which authorized the court fund to be used for an annual rental for courthouse and jails, and authorized an additional levy not exceeding three mills for the purposes enumerated in said section, was repugnant to section 26, art. 10, of the Constitution, and the issuance of such warrants were enjoined. In Kerr, County Clerk, v. State, 33 Okla. 110, 124 Pac. 284, mandamus was sought to compel the county clerk to issue and deliver certain warrants for claims which had been allowed by the board of county commissioners in excess of 80 per cent. and within 100 per cent. of the estimated income and revenue for the year in which said claims had accrued. The issuance of the writ was objected to on the ground that by section 1, c. 16, Session Laws 1895 (section 1683, Comp.Laws 1909), a limitation was placed upon the amount of warrants which could be issued not to exceed 80 per cent. of the amount levied for the fund against which said warrant was drawn. The question decided in Shannon et al. v. State, 33 Okla. 293, 125 Pac. 1106, was that by virtue of section 9, c. 80, Laws 1910-11, entitled "An act relating to the issuance of warrants and certificates of indebtedness." the board of county commissioners was without authority to allow and approve a claim against any fund of the county or order a warrant therefor issued on such fund where during the fiscal year in which the claim was presented, claims had already been allowed and approved on such fund equal to the estimate made and approved by the excise board for such fund for the current fiscal year, and this was held to be true, although there was to the credit of such fund an unexpected balance derived from the revenues during the preceding year. In State

v. Stanfield, 34 Okla. 524, 126 Pac. 239, mandamus was sought against defendant, as judge, requiring him to hold a term of court in Creek county. The writ was allowed requiring defendant to hold a term of court for the purpose of transacting business which might be carried on without imposing a charge on the court fund, or to impanel a jury, or incur any expense which would be a charge against that fund. In none of the cases heretofore decided by this court has the precise question here involved been presented or determined. The case of In re Application of State to Issue Bonds to Fund Indebtedness, supra, is the nearest in point in principle. While in some of the cases there is a discussion which would seem to indicate that in the opinion of the writer obligations of the character here involved would be invalid, the decision of this point was not necessary to the determination of the case. In Shannon v. State, supra, relator was county jailor of Creek county, and sought mandamus to compel the board of county commissioners to approve certain claims for boarding and keeping state and county prisoners in his custody. It was admitted in that case that the county was indebted to him in the sum claimed; that the claim was correct and due by the county and a proper charge against the contingent fund. The court in the opinion did not question this concession of counsel, but simply held that the board could not be compelled by mandamus to allow said claims, nor make payment thereof.

The judgment is reversed, and cause remanded.

All the Justices concur.

THACKER, J. (dissenting). I appreciate the force of the reasons for the opinion of the court; but I dissent for reasons stated in Campbell v. State ex rel. Brett, County Attorney, 23 Okla. 109, 99 Pac. 778, in Shannon v. State ex rel. Davidson, 33 Okla. 293, 125 Pac. 1106, in Buxton & Skinner Stationery Co. v. Board of County Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215, in Kerr, County Clerk, v. State ex rel. Wimbish, County Attorney, 33 Okla. 110, 124 Pac. 284, and, especially, for reasons stated in State ex rel. Decker v. Stanfield, 34 Okla. 524, 126 Pac. 239, which case finds ample support in Board of County Commissioners of the County of Lake v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060, Wis. Cent. R. Co. v. Taylor Co., 52 Wis. 37, 8 N. W. 833, and Grand Island & N. W. R. Co. v. Baker, 6 Wyo. 369, 45 Pac. 494, 34 L. R. A. 835, 71 Am. St. Rep. 926, cited by

Commissioner Bleakmore in the original but now rejected opinion in this case, reported in 158 Pac. 601, L. R. A. 1916F, 892, which I think is correct.