## DOYLE v. BOARD OF COM'RS OF LE-FLORE CO.

No. 13797—Opinion Filed Oct. 7, 1924.

### Counties—Invalidity of Contract for Lack of Funds—Expenses of Tick Eradication.

A live stock inspector appointed by the State Board of Agriculture, with the assent of the board of county commissioners of any county, to serve in such county in the eradication of ticks, does not thereby become an officer of such county; and where such inspectors have contracted with the board of county commissioners for the purpose of cooperating with the State Board of Agriculture in the work of tick eradication, after the fund for that purpose has been exhausted, such contract does not create a legal liability on the part of the county.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Le Flore County; E. F. Lester, Judge.

Action by S. J. Doyle against Board of County Commissioners of LeFlore County. Judgment for defendants, and plaintiff appeals. Affirmed.

R. P. White and L. V. Reid, for plaintiff in error.

James Babb, Co. Atty., for defendant in error.

Opinion by RAY, C. This appeal is by the plaintiff from an adverse judgment in a suit to recover for salary and actual necessary expenses as live stock inspector while serving in that capacity in the work of tick eradication in LeFlore county. The case was submitted on the following agreed statement of facts:

"It is hereby agreed by and between the parties to this action, that the parties named in the schedule to plaintiff's petition were live stock inspectors appointed by the authority of the State Board of Agriculture

of the State of Oklahoma, the exercise of authority to make such appointments being assented to by the board of county commissioners, and said board of commissioners issued warrants in payment of the services of said inspectors where claims were presented before the funds were exhausted, and were at the times set out in said schedule acting as such inspectors in LeFlore county, Okla., under said authority, and that such inspectors rendered the services and incurred the expenses charged, as set out in said schedule, and that the claims therefor have been regularly assigned to the plaintiff herein.

"That at the times such services were rendered and the expenses were incurred, as set out in said schedule, the estimate for tick eradication purposes in said county had been exhausted, and there then existed no estimate out of which said claims could be paid by the county, and that said county commissioners disallowed said claims."

Plaintiff in his brief says the case depends upon the determination of one question alone, that is, whether or not the services rendered constituted legitimate emoluments and expenses of officers,' or whether such claims rest upon contract. It is correctly conceded by plaintiff that if his services rested upon contract with the board of county commissioners entered into after the fund for such purpose fixed by the excise board, had been exhausted, then he would be held to have notice of the state of the fund provided by the county for that purpose, and could not recover for services performed after that amount had ben exhausted.

It is contended that by the appointment as live stock inspector by the State Board of Agriculture with the assent of the board of commissioners of LeFlore county for the purpose of tick eradication in the county, plaintiff became and was an officer of that county, and, therefore, the case is within the rule laid down by this court in Smart, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 Pac. 1101, where it was said:

"Moneys lawfully expended by a sheriff in the feeding of prisoners and fees earned by him in the discharge of duties imposed upon him by the Constitution and laws of the state constitute a valid charge against the county, and are not within the limitations imposed upon the county by section 6, art. 10 (section 291, Wms. Anno.), Constitution."

In that case the sheriff sought to recover for expenses in feeding prisoners although the funds provided for the conduct of that office within the statutory and constitu-

tional limitations had been exhausted. After reviewing the former opinions of this court, and the opinions of the courts of various states, it is said:

"The net result of the decisions holding that constitutional provisions such as article 10, sec. 26, do not apply to those liabilities which are not voluntarily incurred by the municipality is that they are careful to limit the application of the rule to those liabilities which are imposed upon the municipality by the superior power of the sovereignty as expressed in the Constitution or valid acts of the Legislature."

The authorities cited sustain plaintiff's contention that it is not necessary to the creation of an office that the Legislature declare in express words that such office is created. The use of any language with legislative intent to create the office is sufficient. Was it the legislative intent, in authorizing the State Board of Agriculture to appoint live stock inspectors, to make them county officers of any county while serving as live stock inspectors in such county? Section 3678, Comp. Stat. 1921, authorizes the State Board of Agriculture to appoint a sufficient number of live stock inspectors to carry out the provisions of law and enforce the regulations relative to animal inspection and quarantine lines, and fixes their compensation at $4 per day, and specified actual expenses. They are required to take an oath of office and execute a bond in the sum of $1,000. Sections 3680, 3681, and 3682 define the duties of such inspectors. By these sections it is made clear that the services of live stock inspectors appointed by the State Board of Agriculture are not limited to any county, and in the performance of their duties are not controlled by county lines. Their services are to be rendered wherever the live stock interests are threatened by disease, or where the quarantine line is not being observed, or the regulations of the State Board of Agriculture are being violated. They are in no sense county officers. By section 3673, it is made the duty of the board of county commissioners, as far as practicable, to cooperate with and assist the State Board of Agriculture, and officers working under their authority, in protecting the live stock of their respective counties from all contractual and infectuous diseases, and especially the eradication of ticks, the carriers of Texas or splenetic fever.

The excise board of any county situated above the state quarantine line as fixed by the State Board of Agriculture is given power to levy a tax (limited to one mill)

on all taxable property of the county to provide a fund with which to cooperate with the State Board of Agriculture in the work of tick eradication, which fund may be used for any one or all purposes of constructing dipping vats, employment of competent live stock inspectors, purchasing material for disinfecting, or any purpose which, in the judgment of the board of county commissioners, promises to further the protection of the live stock interests of the county. Clearly, by the language used in this section, the creation of an office was not intended. The employment of live stock inspectors is within the discretion of the board of county commissioners. They may use the fund provided for the employment of inspectors, or otherwise, as in their judgment best serves to cooperate with the State Board of Agriculture, and officers working under its authority, in the protection of the live stock interests of the county.

Construing these sections together, it was clearly the intention of the legislature that the state and county officers having to deal with tick eradication should act in harmony and cooperation for that purpose under the general control and direction of the State Board of Agriculture. The authority to appoint live stock inspectors is conferred upon the state board, and it is unnecessary, in the exercise of that authority, to have the assent or approval of the board of county commissioners of any county. But such appointment with the assent or approval of the board of county commissioners in the county where the appointee was to perform his services was, no doubt, for the purpose of securing that hearty cooperation necessary to carry out the spirit of the act and to accomplish the desired purpose of tick eradication. Under the agreed statement of facts, the plaintiff was not an officer of LeFlore county, and not entitled to recover judgment against the board of county commissioners of that county.

The judgment should be affirmed.

By the Court: It is so ordered.