¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Is the maintenance of a county jail, regardless of whether the jailis operated by the county sheriff or a public trust created for suchpurpose, a constitutional duty or a statutory duty?
 2. Is the requirement for funding a county jail the same regardless ofwhether the jail is operated by the county sheriff or a public trustcreated for such purpose?
 Duty to Maintain County Jail
¶ 1 While the office of county sheriff was created by Article XVII, Section 2[1] of the Oklahoma Constitution, the duties of the county sheriff are set by legislative action mainly in Title 19 of the Oklahoma Statutes. Included in such duties, the Oklahoma Legislature charged the county sheriff with the responsibility to maintain the county jail pursuant to 19 O.S. 2001, § 513[19-513], which provides:
 The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable.
Id. In addition, the Legislature further assigned jail duty to the county sheriff in 57 O.S. 2001, § 47[57-47] by providing as follows:
 The sheriff, or such person designated by law in his place, shall have charge of the county jail of his county and of all persons by law confined therein, and such sheriff or other officer is hereby required to conform, in all respects, to the rules and directions promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statues and of the district judge and communicated to him by the proper authority.
Id. Recognizing that offices created by Article XVII of the Oklahoma Constitution, such as the county sheriff, are subject to legislative change, the Legislature allows a public trust to be formed by the county for the purpose of operating a county jail in order to promote and preserve the public safety of the county, under either 19 O.S. 2001, §§ 904.1[19-904.1] — 904.10 or 60 O.S. Supp.2007, § 176.[2]
¶ 2 In addition, the jail facility and/or the operation of a county jail may be contracted out to a private contractor by the county.[3]
Therefore, a county jail may be operated and maintained by the county sheriff, a public trust or a private contractor retained by the county.
¶ 3 To alleviate any confusion over whether the duties to operate a county jail imposed on a public trust are different than those imposed on the sheriff, the Legislature clarified the issue in 19 O.S. Supp.2007, § 513.2, in pertinent part by providing:
 A. For the purposes of any jail facility, holding facility or detention center, every reference in statute or rule to any duty or responsibility imposed upon the sheriff or any jailer to operate, manage or provide any service to any person in the custody of such facility or any service related to the management or operation of such facility shall be deemed applicable to and imposed upon the public trust . . . who by contract or otherwise legally operates or manages such jail facility, holding facility or detention facility.
 B. It is unlawful for any public trust . . . contracting to operate or manage any jail facility, holding facility or detention center to fail to comply with the provisions of any statute or rule relating to duties and responsibilities required to operate, manage and provide services to any person in the custody of such facility.
 C. Every governmental entity and other authority who contracts for the operation or management of any jail facility, holding facility or detention center with a public trust . . . shall be required to have a provision in such contract requiring compliance with the duties and responsibilities imposed by statute or rule to operate or manage a jail facility, holding facility or detention center.
Id. (emphasis added)
¶ 4 This office has previously discussed the duties of a public trust formed for the purpose of operating a county jail and determined that a trust "steps into the shoes of the county and the sheriff for the purpose of operating the county jail. Therefore, a county jail operated by a public trust has the same duties as a jail operated by the county itself through the sheriff." A.G. Opin. 04-17, at 100.
¶ 5 Now that we have confirmed the duties of operating a county jail are the same regardless of whether the jail is operated by the county sheriff or a public trust, the remaining part of your first question involves a determination of whether such duties are constitutional or statutory.
¶ 6 The distinction between a constitutional duty and a statutory duty has evolved from Oklahoma case law when involving public indebtedness and county finance. The fact the sheriff must perform certain duties under various statutory provisions[4] does not necessarily mean those duties are statutory duties. As discussed below, some of the duties delegated to the county sheriff by legislative mandate may be considered constitutional duties.
¶ 7 The definition of a constitutional duty in the context of public indebtedness and county finance law was established by the Oklahoma Supreme Court in the case of Smartt v. Board of CountyCommissioners, 169 P. 1101 (Okla. 1917). Smartt involved a county sheriff who sought reimbursement for the feeding of county prisoners, a duty mandated by statute. Id. at 1101. The county refused to reimburse the county sheriff because the revenue that had been provided for that fiscal year had already been exhausted. Id. Since the county's revenue had already been expended, the county did not provide the county sheriff with any additional funds over concern the county would have violated Article X, Section 26 of the Oklahoma Constitution. Smartt quoted Okla. Const. art. X, § 26 in pertinent part stating:
 No county *** shall be allowed to become indebted, in any manner, or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose.
Id. at 1101.
¶ 8 However, Smartt created an exception to Article X, Section 26.Smartt held that the very purpose of state government is to "delegate thereto the performance of certain functions looking to the common safety and welfare, and the necessity for the performance of these functions through the agency of the state and its various subdivisions is the sole object for its creation." Id. at 1102. According to the court, the people had provided in the Constitution for a full set of state offices, "and confided to each the performance of certain duties which are made mandatory . . . for the protection and well-being of the people composing the state." Id. Those certain duties must "always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them." Id.
¶ 9 The court further held that the surest way the state could fail to perform those duties would be to "construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other." Id. Such was the case in Smartt, where the county was depriving the sheriff of the means necessary to perform his mandatory duty of feeding county prisoners by refusing to reimburse his expenses. The court went on to say that if such a construction took place, it would be impossible for officers to enforce the laws for the regulation and protection of the public peace and safety. Id. As a result, the feeding of prisoners was a constitutional duty of the sheriff that was not considered an indebtedness within the limitation imposed by Article X, Section 26. Id. at 1104. Therefore, even though the feeding of prisoners was mandated by statute, the county sheriff, as a constitutional officer, was under a constitutional duty to feed prisoners, which was necessary for the protection and well-being of the people. Id. 1102. A logical extension of that reasoning means that if feeding prisoners is a constitutional duty of the sheriff, so is maintaining and operating a county jail, due to the fact a jail is necessary to incarcerate prisoners and the incarceration of prisoners is necessary for the protection and well being of the people.
¶ 10 This reasoning was further supported in Protest of Kansas CitySouthern Railway. Co., 11 P.2d 500 (Okla. 1932), where the sheriff incurred expenses for feeding prisoners, providing supplies necessary for the maintenance of the county jail and heating the county jail. The Supreme Court of Oklahoma relied on Smartt to determine that such indebtedness was not subject to the limitations of Article X, Section 26 of the Constitution, because feeding prisoners in the county jail, providing supplies for the necessary maintenance of the county jail and heating the county jail were all constitutional duties. Id. at 510.[5]See also Hillcrest Med. Ctr. v. State, 675 P.2d 432, 435 (Okla. 1983).[6]
¶ 11 Even though statutes such as 57 O.S. 2001, § 52[57-52] and 74 O.S. Supp.2007, § 192 require a county sheriff to provide necessary supplies for the county jail, under the standard set in Smartt and Protest ofKansas City Southern Railway Co., it is a constitutional duty of the sheriff to maintain a county jail by reason of the jail being necessary for the "protection and well-being of the people composing the state."Smartt, 169 P. at 1102.
¶ 12 As discussed above, under the rule adopted in Smartt, the county sheriff as a constitutional officer has the constitutional duty to maintain the county jail, and even though a public trust is not created or designated as an office under the Constitution, a public trust operating a county jail takes on the duties of the sheriff because the public trust "steps into the shoes of the county and the sheriff for the purpose of operating the county jail." A.G. Opin. 04-17, at 100. As a result, a public trust created for the purpose of operating a county jail has been delegated the constitutional duty to maintain the county jail. Therefore, the maintenance of a county jail, either by the county sheriff or a public trust created for the purpose of operating a county jail, is a constitutional duty.
 Funding the County Jail
¶ 13 You next ask whether the requirement for funding a county jail is the same whether the jail is operated by a public trust or operated by the sheriff. This question is closely related to the first, both of which we assume arose from funding issues and budget concerns over the amount and source of money needed by the county to fund the operation of the county jail, all the more controversial when the operator of the jail is a public trust.
¶ 14 State law requires each county, at its expense, to maintain or have access to a jail. Section 41 of Title 57 provides as follows:
 Every county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed.
 A county may enter into contracts with private contractors to provide and operate jail facilities for the county.
Id. Nowhere in the above statute does the Legislature make a distinction between funding a county jail operated by the sheriff and one operated by a public trust created for such purpose. It is an obligation of the county regardless of the operator of the jail, even if operated by a private contractor.
¶ 15 As discussed above in answering your first question, among the material differences between a constitutional duty and a statutory duty are the necessity and priority of funding by the county.
¶ 16 In describing the services of a county excise board, the watchdog of county finances, the Legislature expressed its intent on this issue by charging the county excise board with the duty of requiring adequate provision for performance of mandatory constitutional and statutory governmental functions under 68 O.S. 2001 Supp.2007, §§ 3006 — 3007 in non-budget board counties, and 19 O.S. Supp.2007, § 1414 in budget board counties. See A. G . Opin. 07-6 (describing in detail non-budget board counties and budget board counties). Furthermore, a county must appropriate its income for all constitutional duties before it appropriates its income for statutory duties or any other expenditure as described in Protest of Kansas City Southern Railway Co., where the court stated:
 Until an appropriation has been made for the performance of constitutional governmental functions, no appropriation may be made for the performance of legislative governmental functions or for other expenditures of public funds.
Id. 11 P.2d at 509.
¶ 17 Therefore, because the necessary maintenance of a jail is a constitutional duty, a county must first appropriate funds for such duty and any other constitutional duties before any county funds are expended for statutory duties or other functions.
¶ 18 We have already determined through a reading of pertinent case law that it is a constitutional duty to maintain a county jail, whether operated by the county sheriff or a public trust created for such purpose, which under 57 O.S. 2001, § 41[57-41] and 19 O.S. Supp.2007, § 513.2(A) makes the funding requirement the same regardless of the operator of the jail.
¶ 19 Therefore, not only is a county required to provide for a jail and fund its operation, regardless of whether the jail is operated by the sheriff or a public trust created for such purpose, it must also give priority to the funding to ensure performance of a constitutional duty.
 ¶ 20 It is, therefore, the official Opinion of the Attorney General that:
 1. The maintenance of a county jail, either by the county sheriff or a public trust created for the purpose of operating a county jail, is a constitutional duty. See Smartt v. Bd. of County Comm'rs, 169 P. 1101, 1102 (Okla. 1917); Protest of Kansas City S. Ry. Co., 11 P.2d 500, 510 (Okla. 1932).
 2. A county is required to provide for a jail and fund its operation, and give priority for the funding to ensure performance of a constitutional duty. Such funding requirement is the same regardless of whether the jail is operated by the county sheriff or a public trust created for such purpose. 57 O.S. 2001, § 41; 19 O.S. Supp.2007, § 513.2(A).
W.A. DREW EDMONDSON, Attorney General of Oklahoma
JAMES V. BARWICK Assistant Attorney General
[1] There are hereby created, subject to change by the Legislature, in and for each organized county of this State, the offices of Judge of the County Court, County Attorney, Clerk of the District Court, County Clerk, Sheriff, County Treasurer, Register of Deeds, County Surveyor, Superintendent of Public Instruction, three County Commissioners, and such municipal township officers as are now provided for under the laws of the Territory of Oklahoma, except as in this Constitution otherwise provided. Id.
[2] The main distinction between a public trust created under Title 19 and one under Title 60 is that the former requires county voter approval relying directly on tax revenue while the other can be created by the governing body of the beneficiary such as the county commissioners.See id.
[3] The statutes applicable to jail privatization are found at 19 O.S. 2001, § 744[19-744] and 57 O.S. 2001, § 41[57-41].
[4] See 19 O.S. 2001 Supp.2007, §§ 513; 516; 57 O.S 2001, §§ 47, 52; 74 O.S. Supp.2007, § 192 (describing certain duties of the sheriff).
[5] It is interesting to note the court also held that it is not a constitutional duty to provide a telephone for the county jail because "[a] telephone is a luxury rather than a necessity in a county jail."Id. at 510.
[6] The Supreme Court of Oklahoma held that it was a constitutional duty to provide medical care to prisoners even though it was mandated by Section 52 of title 57. Id. at 435. The court referenced Protest ofKansas City Southern Railway Co., and said:
[We] held that the feeding of prisoners in the county jail and supplies necessary for the maintenance of the county jail are [constitutional governmental functions]. The instant claim, which involves medical care, is also one arising from such a function.
 Id. at 435.