BOARD OF COM'RS OF TULSA COUNTY v. JOHNSTON et al.

No. 30465. June 30, 1942.

Rehearing Denied Jan. 26, 1943.

Application for Leave to File Second Petition for Rehearing Denied March 9, 1943.

*134 P. 2d 335.*

Dixie Gilmer, County Atty., and John F. Conway, Asst. County Atty., both of Tulsa, for plaintiff in error.

Henry S. Johnston, of Perry, and Phil W. Davis, Jr., of Tulsa, for defendants and cross-petitioners in error.

RILEY, J. This is an appeal by the board of county commissioners of Tulsa county, defendant below, from a judgment in favor of plaintiffs in the sum of $3,900 as attorneys' fee for services rendered the county and other municipal subdivisions in said county.

The facts out of which this controversy arises are somewhat involved. To set them out in detail would require too much space. In brief, they are: About 1931, a controversy arose in Tulsa county as to whether certain property, real and personal, owned by the Morningside Hospital and School for Training Nurses, located in the city of Tulsa, was subject to taxation. The county assessor had placed said property on the tax rolls for the years 1928, 1929, and 1930. On application of the hospital, the board of county commissioners ordered the property removed from the tax rolls. Some question arose as to the propriety of this order, and it was rescinded. Thereupon, the hospital renewed its application. The board of county commissioners, being in doubt as to whether the property was taxable, requested an opinion from the then county attorney, W. L. Coffey. The county attorney by written opinion advised the board that the property of the hospital was not taxable. The tax rolls had been certified to the county treasurer. Thereupon the board of county commissioners entered an order directed to the county treasurer to strike said property from the tax rolls. Therein the board found and held that said property was not taxable for the years 1928, 1929, 1930, or any other year. The county treasurer, apparently on the advice or at the instance of the then Governor, Wm. H. Murray, refused to remove said property from the tax rolls.

The hospital then commenced proceedings in the district court for a writ of mandamus to compel the county treasurer to comply with the order of the board of county commissioners. The then county attorney is said to have consulted Governor Murray and informed him that because he had advised the board of county commissioners that in his opinion the property was not taxable, he felt that he, the county attorney, was disqualified to defend the proceedings brought against the county treasurer.

The Governor then made some arrangement with Hon. James Hepburn to represent the state in said matter. Before anything was done in the matter, Mr. Hepburn died. Thereupon, on October 1, 1932, Hon. Wm. H. Murray, as Governor, entered into a long contract in writing with defendant in error Henry S. Johnston, which after reciting the facts, substantially as stated above, except as to the disqualification of the county attorney, and reciting further that down to that date about $60,000 in taxes and penalties had accrued in favor of the state, county, and other subdivisions, which would be lost if the hospital succeeded in having said property adjudged as not taxable, and recited further that, "It is the duty of the Governor of the State of Oklahoma to see that its laws are executed and that its rights are protected and vindicated in the premises." The contract then provided:

"Now, therefore, The State of Oklahoma, by its Governor, Wm. H. Murray, aforesaid, acting pursuant to the authority vested in him by law, and for and on behalf of the State of Oklahoma, the County of Tulsa, and such other municipalities, school districts or other political subdivisions as are interested in the collection of the taxes aforesaid, and in the proper determination of the rights of the state and its authorities,

as to the collection of the same, hereby commissions, appoints, and employs the Party of the Second Part to represent it and said political subdivisions in the protection and defense of their rights in the premises; and therefore fully authorizes and empowers him to enter his appearance in the aforesaid action now pending in the District Court of Tulsa County, for, and on behalf of the State of Oklahoma, and any and all other actions that may arise in any court of law or other tribunal respecting the collection of the same; and to institute for and on behalf of the State and/or its political subdivisions aforesaid, and in the name of the State of Oklahoma or any of its interested political subdivisions any action or actions at law or equity that, in the judgment of the Party of the Second Part, should be instituted, for the purpose of protecting and vindicating the rights of the State of Oklahoma and its political subdivisions aforesaid in and to said taxes and the enforcement of the collection of the same, and to prosecute such action or actions to a conclusion.

"For the purpose of accomplishing the objects of this employment, the Party of the Second Part is authorized and empowered to associate with him in the performance of the same, a capable member of the Tulsa County Bar, to be selected by the Party of the Second Part, who shall be engaged in the active practice of law, and the compensation hereinafter provided for shall include the compensation of said associate, as well as the Party of the Second Part, for all services rendered or to be rendered under this contract. And the Party of the Second Part agrees that he will associate such local counsel of his choice in this employment.

"It is further agreed that the compensation for all services to be rendered by the Party of the Second Part and his associate hereunder shall be the sum of 25 per cent of any and all taxes collected, now assessed against the real and personal property of the Morningside Hospital and Training School for Nurses, for the years 1928 to 1932, inclusive, and any other taxes which may have been assessed against its real and personal property, remaining unpaid at this time. The aforesaid compensation shall also include any and all personal expenses of the Party of the Second Part and his said associate arising out of the performance of the duties of this employment, but shall not include expenses or disbursements such as to the cost of records, briefs, and other items of similar character which may reasonably be incurred or disbursed in pursuance to the performance of the duties of the employment herein provided for."

Here it may be noted that the contract made no mention of the disqualification of the county attorney of Tulsa county. Henry S. Johnston accepted the "employment," on the terms stated. Thereafter Mr. Johnston associated with himself defendant in error Phil W. Davis, Jr. Thereafter, they appeared and filed an answer on behalf of the county treasurer in the mandamus proceedings and also commenced a separate action in the district court of Tulsa county having for its purpose the setting aside and cancellation of the order of the board of county commissioners removing the property of the hospital from the tax rolls.

After issues were joined in said proceedings, the two actions were consolidated and tried together, resulting in an order and decree holding the property subject to taxation, and canceling the order removing same from the tax rolls. This decree was entered in 1935. The hospital appealed to this court, where the decree of the trial court was affirmed with certain modifications not material here. The decision of this court became final about May 2, 1939. Morningside Hospital, etc., v. Carmichael, 185 Okla. 48, 89 P. 2d 958. After the mandate was spread of record in the district court of Tulsa county, the hospital commenced a proceeding before the board of county commissioners to have the property reassessed for the years 1928 to 1934, inclusive, claiming the valuations excessive.

Defendants in error again appeared and resisted the application. The then county attorney, Dixie Gilmer, also appeared by his deputy, Mr. Conway, and resisted the application. This was the first appearance in the controversy by

the county attorney. The petition was granted and valuation of the property for said years was reduced about 65 per cent. From this order the county appealed and Messrs. Johnston and Davis also appealed.

About that time proceedings were commenced by Messrs. Johnston and Davis for the appointment of a receiver for the hospital. Shortly thereafter proceedings were commenced by the American First Trust Company to foreclose a mortgage on the property of the hospital, and for a receiver. Receivers were appointed, and at the time the hearing was had on the appeal from the order of the board of county commissioners, the receivers had possession of the property. At that hearing the district court in effect affirmed the order reducing the valuations, and notice of appeal was given by the county and Johnston and Davis.

Later these notices were withdrawn and the district court entered an order directing the receiver to pay taxes down to and including 1939, in the sum of approximately $63,000, and in addition required the receiver to pay an attorney's fee to Messrs. Johnston and Davis in the sum of $5,000, and compensation of an auditor employed to audit the books and records of the hospital in the sum of $1,000.

The receiver also paid all court costs to that date.

Incidentally, it may be stated that in all the litigation up to that time Mr. Johnston and Mr. Davis had paid out of their own funds some $500 to $1,000 in expenses, including printing of original briefs in this court. The county paid for reply and supplemental briefs about $50.

The order of the court directed the payment by the receiver of attorneys' fee in the sum of $5,000, among other things provided:

"(a) An attorney's fee of $5,000 to Henry S. Johnston and Phil W. Davis, Jr., special counsel for the State of Oklahoma, but without prejudice to any right and claim that the said attorneys for the state may have and may present in the proper course to the board of commissioners, or to whomsoever it is proper to present it, such right and claim being hereby reserved and the same is not hereby adjudicated, except only as provided in subparagraph (d) hereunder."

Subparagraph (d), therein referred to, provided:

"(d) The payment of the $5,000.00 attorney's fee to said Henry S. Johnston and Phil W. Davis, Jr., provided in subparagraph (a), above, shall constitute full and final payment and satisfaction of any and all fees or claims by said Henry S. Johnston and Phil W. Davis, Jr., against the said Morningside Hospital & Training School for Nurses, its successors and assigns, and any of its property, real or personal, and against the Receivers herein and the property of the Receivership estate; and by the payment of said $5,000.00 any lien or liens claimed or filed by said Henry S. Johnston and Phil W. Davis, Jr., are hereby released and discharged, but only insofar as the same affects the said Morningside Hospital & Training School for Nurses, its successors and assigns, and any of its property, real or personal, and the Receivers herein and the Receivership estate, . . ."

Approximately $63,000 was paid in as taxes. The $5,000 attorneys' fee was also paid. In the meantime, taxes for the year 1940 had accrued in the sum of approximately $8,000. January 23, 1941, defendants in error herein filed an application in one of the cases in the district court for allowance of an attorneys' fee against Tulsa county for services rendered in the matters herein above set out in the sum of $17,500.

On objection of the county attorney the application was stricken from the case above referred to and the court ordered same filed as a separate action against Tulsa county.

The county attorney filed response on behalf of the county asserting the invalidity of the claim on several distinct grounds. Trial was had on the issues

thus joined resulting in a judgment against the county in favor of Henry S. Johnston and Phil W. Davis, Jr., in the sum of $3,900, from which judgment this appeal is prosecuted.

Defendants in error, asserting that the fee allowed by the trial court is inadequate, file a cross-petition in error.

The only question presented, aside from the amount of the fee allowed, is whether the county of Tulsa is liable under the record. The parties will hereinafter be referred to in the same relation as in the trial court, Johnston and Davis, as plaintiffs, and the board of county commissioners as defendant.

It is the settled law of this state that one who demands payment of a claim against a county must, in order to obtain payment thereof, show some statute authorizing it or that it arises from some contract, express or implied, which finds authority in law, and it is not sufficient that the services performed, for which payment is claimed, were beneficial. Jackson v. Board of County Com'rs, Muskogee Co., 133 Okla. 263, 271 P. 1041. This rule has its foundation in Board of County Com'rs of Washita Co. v. Brett, 32 Okla. 853, 124 P. 57. See, also, Anderson v. Board of County Com'rs of Grant Co., 44 Okla. 164, 143 P. 1145; Board of County Com'rs of Noble County v. Whitney, 73 Okla. 160, 175 P. 112.

The only statutes called to our attention as to employment or appointment of an attorney to represent the interests of the state or county are 74 O. S. 1941 § 6, and 19 O. S. 1941 § 187.

Section 6, supra, provides:

"The Governor shall have power to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, plead in any cause, matter, or proceeding in which the state is interested or a party, may prosecute offenses against the law of the state, and may institute and conduct proceedings before grand juries; provided, that nothing herein contained shall limit the power of courts of record to appoint an attorney to prosecute criminal actions in such courts when the county attorney is disqualified or unable to act."

Thereunder the Governor was authorized to employ plaintiffs to protect the interests of the state in the litigation to determine whether the property of the Morningside Hospital was taxable, in that for the years 1928 to 1932, inclusive, levies of ad valorem taxes were authorized and made for state purposes. After the year 1932 no ad valorem taxes could be levied for state purposes. How counsel so employed are to be paid is another matter. It may be noted, however, that an annual appropriation is usually made for the executive department for "extraordinary protection of the state." Thereunder, there is usually appropriated a "contingent fund" ranging from $5,000 in 1933-34 to $85,000 in 1938-39. These appropriations are evidently intended to provide funds to pay attorneys' fees for services rendered the state under the authority of section 6, supra. But said section is not broad enough to authorize the Governor to employ counsel to represent a county at the expense of the county.

19 O. S. 1941 § 187, provides:

"The district court, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, or disqualified to act, may, appoint, by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose. Such attorney shall be paid a reasonable compensation for his services by the county for which he is so appointed."

Plaintiffs rely, in part at least, on said provision. But the difficulty in applying that section is that there is nothing in the record to indicate that plaintiffs,

or either of them, was ever appointed by the district court to act for or represent either the state or Tulsa county. In fact, there is nothing in the record to indicate that Mr. Coffey, who was county attorney of Tulsa county at the time the litigation arose, was disqualified down to the time at which he was called as a witness for plaintiffs. He then testified in substance that some time in 1931, after he had given the board of county commissioners of Tulsa county his written opinion that the property of the Morningside Hospital was not taxable, he received a letter from Hon. Wm.H. Murray, then Governor, in which the Governor voiced some criticism of his opinion, and that he, the Governor, had received word of the action of the board of county commissioners; that thereupon he called the Governor by telephone and requested an interview; that he immediately went to Oklahoma City and informed the Governor that he felt, since he had rendered an official opinion to the board, that he would certainly be disqualified to handle the litigation; that thereupon the Governor employed Mr. James Hepburn, who went to Tulsa and consulted Mr. Coffey, but died before anything further was done in that matter, and that the Governor then employed Hon. Henry S. Johnston, and that after Messrs. Johnston and Davis appeared in the litigation he never had anything to do with the litigation. However, there is nothing in the record to show that Mr. Coffey ever certified his disqualification to the district court, or ever indicated in any way that he was disqualified until called as a witness.

All of the pleadings filed in behalf of the state and its subdivisions and all of the journal entries of judgment and orders made by the district court showed appearance was by Henry S. Johnston or Henry S. Johnston and Phil W. Davis, Jr., down to the hearing of the application of the hospital to have the assessed valuation of its property reduced, which was in 1939.

So it fairly appears that during all that time the county attorney of Tulsa county was absent from the court, or at least was not participating in the litigation. But at no time did the district court make an order entered on the minutes of the court, or otherwise, appointing plaintiffs or either of them "to perform for the time being the duties required by law to be performed by the county attorney."

In Lattimore v. Vernor, 142 Okla. 105, 288 P. 463, it is held:

"Before the district courts of this state have the power to appoint a suitable person to perform, for the time being, the duties required by law to be performed by the county attorney, a hearing must be had and proof must be offered showing that the county attorney is disqualified, and an order entered upon the journal of said court showing such a hearing has been held, and proof offered, and the court finds from such proof that the county attorney is disqualified to perform, for the time being, the duties, for which the district court then appoints a special or substituted county attorney to perform."

In Mifflin, County Attorney, et al. v. Arnett, Dist. Judge, 153 Okla. 47, 4 P. 2d 732, the same rule was applied. Therein the county attorney sought and obtained a writ of prohibition against the district judge to prohibit him from entertaining jurisdiction and proceeding further in an action brought in the district court of McCurtain county by the State of Oklahoma on relation of T. G. Carr, special county attorney theretofore appointed by the district court by an order reciting that the regular county attorney was and had disqualified by reason of interest in the proposed action. To his answer in the proceedings for a writ of prohibition, the district judge attached his affidavit to the effect that:

"In August, 1931, he called the county attorney in his chambers and advised him that the county commissioners of certain counties in his judicial district had instituted action, the purpose of which was to contest the constitutionality of certain acts of the 1931 Legislature relative to salaries of county officers, and that he informed the county

attorney that it was his duty to institute like procedings in behalf of McCurtain county. That the county attorney stated to him that he was disqualified to bring the action, and further stated that it would be proper for respondent to appoint a special county attorney for this purpose, and that upon these statements he did appoint T. G. Carr as special county attorney and authorized him to bring and prosecute the action."

As to the effect of such statements by the county attorney, this court said:

"We do not think these extrajudicial statements made by the county attorney sufficient to confer jurisdiction upon respondent to make the appointment questioned."

It is then said:

"There was no action or proceeding pending, no hearing was had to disqualify the county attorney. No proof was offered which established that he was disqualified. Respondent was therefore without authority to make the order appointing a special county attorney. This being true, the action sought to be prosecuted is not legally pending and further proceedings therein on the part of respondent would amount to an unauthorized application of judicial power."

This could not be said with reference to the litigation out of which this proceeding arose, because there was an action pending against the county treasurer brought by the Morningside Hospital.

But certainly there was no hearing had as to the disqualification of the county attorney and no order made appointing plaintiffs to represent the state or county. They were there under and only under the authority conferred upon them by the then Governor. The mere recognition of them by the court was not sufficient to constitute an appointment as counsel to represent the county. Therefore, there was no authority to require the county to pay for their services under the provisions of 19 O. S. 1941 § 187. Had the board of county commissioners contracted with plaintiffs herein to represent the county, their

contract would have been ultra vires and void. Board of County Com'rs of Grant County v. Ridings, 100 Okla. 62, 227 P. 96. Therein it is said:

"A contract made by the board of county commissioners for the county with attorneys at law for their services as such, which services are such as the law requires the county attorneys to perform, is ultra vires and void."

Plaintiffs in error contend:

"Where in the course of administration of justice in the court, the public interests lack a representative, from whatever cause, it is the inherent and the constitutional duty of the Governor, or the courts, or both, to supply such representative or representatives to act in the interest of the state and county."

With this we agree. But the performance of such duty, by the Governor or by the courts, is to be done in the manner provided by law.

They next contend that:

"The jurisdiction to allow compensation to representatives acting in the stead of the county attorney is in the district court of the county, and the duty to pay the allowance rests upon the county whose county attorney's duties are specially performed."

With this contention we also agree, provided the representative or representatives acting in the place of the county attorney has or have been appointed in the manner provided by law, and under circumstances warranting such appointment.

Plaintiffs next assert that:

"Where special attorneys have been appointed by the Governor, permitted to appear and perform the county attorney's duties by the courts, and their services have been recognized, approved and accepted by the county itself, and have been completed, the county may not challenge, upon their application to the district court for an allowance of their compensation, the right of the attorneys to perform the services."

The right to perform the services is not the question before us. The question

before us is the power of the court, under the record made, to render judgment against the county for such services.

We have pointed out that in Board of County Com'rs of Grant County v. Ridings, supra, the board of county commissioners may not contract for the services of an attorney at law as such, which services are such as the law requires the county attorney to perform, and thereby bind the county to pay for such services. The Governor of the state could no more bind the county than could the board of county commissioners; much less so, for by law the board of county commissioners is the financial manager of the county's affairs. There is no law authorizing the Governor to bind a county by a contract with attorneys other than the county attorney to perform services for the county.

However beneficial to the county the services may have been, the county is not liable therefor unless liability is imposed by law.

In this connection it may be said that the services rendered by the plaintiffs herein were highly beneficial to the county. We agree that the county benefited greatly from their services. Not, however, to the extent asserted by plaintiffs. The total taxes paid in and to be paid as a result of plaintiffs' services were approximately $81,000, including the 1940 tax which accrued after plaintiffs had performed all the services for which they seek pay from the county. But the county did not benefit to that extent. Some $3,000 or more went to the state. Of the balance a large part must have gone to the city of Tulsa and another large part must have gone to the independent school district of the city of Tulsa.

Assuming that the county, city, and school district levies were equal, the county could have benefited not to exceed $23,000. But that was a benefit which would justify a judgment as large or larger than the amount allowed in this action, if we could find

the law under which to justify any judgment whatever against the county.

The services rendered by Mr. Ridings involved in Board of County Com'rs of Grant Co. v. Ridings, supra, were highly beneficial to Grant county. But unfortunately Mr. Ridings was unable to show some statute authorizing payment of his demand, or that his demand arose from some contract, express or implied, which found authority of law. It was insufficient that the services performed were beneficial. So it is here. It is unfortunate that plaintiffs are unable to point to a statute authorizing their demand. Their services were highly beneficial to the county, city, and school district, but that alone is not sufficient to sustain the judgment.

Under the authorities cited, the judgment is contrary to law and is reversed.

WELCH, C.J., and OSBORN, BAYLESS, GIBSON, and DAVISON, JJ., concur. CORN, V.C.J., dissents. HURST and ARNOLD, JJ., absent.