JOHNSTON v. CONNER et al.

No. 34182.   Oct. 16, 1951.

Rehearing Denied Oct. 30, 1951.

*236 P. 2d 987.*

Henry S. Johnston, Perry, Allen G. Nichols, Wewoka, and Phil W. Davis, Jr., Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for respondents.

Bill Logan, Lawton, James A. Rinehart, El Reno, Roy White, Eufaula, Tom Anglin, Holdenville, Streeter Speakman, Jr., Sapulpa, Wesley V. Disney, Tulsa, Paul Harkey, Idabel, Robert L. Hert, Stillwater, and Walter Billingsley, Wewoka, amici curiae.

DAVISON, J. This is an original action in this court, wherein Henry S. Johnston, as petitioner, seeks a writ in mandamus requiring the respondents to perform such acts as are necessary to effect the payment to him of $16,000 as attorney's fees for which appropriation was made by the 1949 Legislature.

The facts upon which this action is founded are fully set out in the case of Board of County Commissioners of Tulsa County v. Henry S. Johnston, 192 Okla. 203, 134 P. 2d 335, in which this court denied recovery of the above amount from Tulsa county. It is, therefore, unnecessary to restate them in detail. Very succinctly stated they are these: The Governor of the state, in October, 1932, employed the petitioner, Henry S. Johnston, to represent the state and Tulsa county in establishing the taxability of property owned by Morningside Hospital and School for Training Nurses, and in collecting such taxes. After extended litigation, some $80,000 in taxes was collected. He attempted to recover the amount of the agreed fee from Tulsa county but was unsuccessful as a result of the above-cited case. The contract between the Governor and Johnston was written and provided that Johnston was to receive 25% of all amounts collected by his efforts under the contract of employment. Both contracting parties thought that the Governor could bind the recovery to this extent by contract, whether the amount recovered would go to Tulsa county or the state, or, as happened here, both. We held in the above-cited case that the contingent fee provision could not be applied to the recovery that belonged to Tulsa county.

In May, 1949, the State Legislature appropriated $16,000 for payment of fee for the services rendered, Session Laws of 1949, p. 686. Claim was filed for said amount and the various fiscal officers of the state refused to allow or pay said claim. Hence, this action.

Article 6, §8 of the Oklahoma Constitution, provides:

"The Governor shall cause the laws of the State to be faithfully executed. . ."

And 74 O.S. 1941 §6 provides:

"The Governor shall have power to employ counsel to protect the rights or interests of the State in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, plead in any cause, matter, or proceeding in which the State is interested or a party, may prosecute offenses against the law of the State, and may institute and conduct proceedings before grand juries; provided, that nothing herein contained shall limit the power of courts of record to appoint an attorney to prosecute criminal actions in such courts when the county

attorney is disqualified or unable to act."

In the case of State ex rel. Haskell, Governor, v. Huston, Judge, etc., 21 Okla. 782, 97 P. 982, this court quoted with approval the following statement from the case of Governor v. Allen & McMurdie, 27 Tenn. 176:

"The Governor of the state is the executive of it. It is one of his duties, among many others, to see that the laws of the state are executed and obeyed. That is a great and fundamental duty, without the proper observance of which society might, and would necessarily be, greatly distracted, and the proper security of life, liberty, and property seriously endangered for the purpose of enforcing the execution of the laws and the protection of the state from rebellion and invasion."

The assessment and collection of taxes constitute the life blood of the various units of governmental machinery, without which no one part would be operable. The enforcement, therefore, of the tax laws is of primary importance. And, just as with the laws on other subjects, different state and county officers are charged with their enforcement, so, too, are the individual state and county officers charged with the assessment and collection of taxes. But, when those officers are incapable of enforcing the same, either because of lack of ability or, as here, because of conflicting elements, it then becomes the statutory duty of the Governor as chief executive to effect their enforcement.

"The power of taxation and the power to apportion taxes are identical and inseparable. People v. Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266. The court cannot control or review this exercise. Steiner v. Sullivan, 74 Minn. 498, 77 N. W. 286. To do otherwise amounts to mere dictum by the court. A county being an involuntary, subordinate political subdivision of the state, created to aid in the administration of governmental affairs of said state, and possessed of a portion of the sovereignty, has no inherent powers but derives those powers solely from the state. All of the powers intrusted to it are the powers of the sovereignty which created it. Its duties are likewise the duties of the sovereignty. Board of County Commissioners of Greer County v. Watson, 7 Okla. 174, 54 P. 441. It cannot impose taxes; that power is derived from the state. See Amos v. Mathews, 99 Fla. 1, 65, 115, 126 So. 308. The power to impose taxes is vested in the Legislature of the state. The apportionment of that tax is included in the power to impose taxes. Gordon v. Cornes et al., 47 N. Y. 608." Herndon, Judge, v. Anderson, 165 Okla. 104, 25 P. 2d 326.

Within the boundaries of the state the power to tax and to collect taxes, limited only by the provisions of the Constitutions of the State and of the Nation, rests in the state itself springing from its sovereignty. By legislative enactment, this power has been delegated to the officers of the several counties. A failure on their part places the burden secondarily upon the shoulders of the Governor by virtue of the above-quoted provisions of article VI, §8, of the Oklahoma Constitution. He need not, however, in such a case as is here before us, personally perform the duty, but he may employ counsel for such purpose. Section 6, Title 74 O. S. 1941, supra, gives him such authority.

In the case of Board of County Commissioners of Tulsa County v. Johnston, supra, it was said:

"Thereunder the Governor was authorized to employ plaintiffs to protect the interests of the state in the litigation to determine whether the property of the Morningside Hospital was taxable, in that for the years 1928 to 1932, inclusive, levies of ad valorem taxes were authorized and made for state purposes. After the year 1932 no ad valorem taxes could be levied for state purposes. How counsel so employed are to be paid is another matter."

The following language used in the opinion in the case of Smartt, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 P. 1101, is very appropriate herein, although the case is otherwise inapplicable since

it deals with expenditures of county officers in the performance of, and recovery for, services after the exhaustion of the appropriation made therefor:

"The very purpose of creating a state government by the people is to delegate thereto the performance of certain functions looking to the common safety and welfare, and the necessity for the performance of these functions through the agency of the state and its various subdivisions is the sole object for its creation. The people have provided in the Constitution for a full set of state officers, and have created separate departments and co-ordinate branches of the government and various municipal subdivisions, and confided to each the performance of certain duties which are made mandatory because necessary for the protection and well-being of the people composing the state. There has been much controversy among publicists and thinkers and much conflict in the decisions of the courts as to the proper and necessary limitations upon the powers delegated to the different departments and arms of the state government, but it is conceded by all that certain necessary fundamental functions must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them, among which are the right to life, liberty, the possession of property, and the pursuit of happiness, and should the state become so impotent as to be unable to discharge these functions, there would result a failure of the purposes for which government was established. The surest way to bring about this result is to construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other. If we give the Constitution such construction the enforcement of laws for the regulation and protection of the public peace and safety in any county might, in its ultimate analysis, depend upon the whim and caprice of certain local officials who might, by failing and refusing to make proper provision therefor, render it impossible to secure an enforcement of such laws by the officers charged with the duty of so doing. The items embraced in plaintiff's claim, being incurred in the necessary discharge of his duties imposed upon him by the imperative mandate of the law, are not within the limitation imposed by section 26, art. 10.'"

We conclude that the Governor was performing a constitutional duty when he sought to enforce the collection of taxes that were unpaid. He had the authority to employ counsel to represent the state in litigation for that purpose. The contract was binding on the state except that it was ineffectual as to the provision fixing the amount of the fee. There being mutual misunderstanding on the part of the contracting parties as to the effect and applicability of the contingent fee provision, said provision was not binding on either party. The fee which Johnston was entitled to recover would be a reasonable one.

The Governor had no funds out of which he could pay the fee. There being fixed liability against the State of Oklahoma for the services performed by Johnston under a valid contract, the Legislature could have permitted him to sue the state to determine the amount of the liability. State v. Adams et ux., 187 Okla. 673, 105 P. 2d 416. Instead, however, it did that which was tantamount thereto by recognizing the liability, which was valid, determining the reasonable value thereof, and making appropriations therefor. This was within the power and functions of the Legislature.

"The courts will not usurp the high prerogative exercised by the Legislature in making appropriations for state purposes. . ." Davis v. Childers, 181 Okla. 468, 74 P. 2d 930; State v. Carter, 186 Okla. 571, 99 P. 2d 1025.

Respondents contend that petitioner is not entitled to the relief sought because article 10, §15, of the Oklahoma Constitution, prohibits the Legislature from making a donation by gift of public monies. In the case of Carter v. Thomas, 172 Okla. 558, 46 P. 2d 460,

relied on by respondents, it was said that:

"A 'gift' as used in section 15, article 10, of the Constitution of Oklahoma intends all appropriations for which there is no authority or enforceable claim. . . ."

Having determined that petitioner has a valid claim for services successfully performed, held in abeyance solely because of the immunity of the state to being sued, it logically follows that the appropriation, made for the payment of the claim, could not be considered a gift as contemplated by article 10, §15 of the Constitution.

Respondents further contend that article 10, §1, of the Oklahoma Constitution precludes such recovery by reason of the interpretation given said section in the case of Rountree v. Roger Phelps, State Budget Officer, 200 Okla. 528, 197 P. 2d 973, holding that:

" . . . No appropriation of monies of one fiscal year may be devoted to the payment of obligations of any other fiscal year except such as are designated 'non-fiscal year obligations'."

This last-cited case, however, is not applicable herein since it deals in its entirety with the interpretation of section 23, art. 10 of the Constitution, which was adopted March 11, 1941, and the Act of the Legislature, vitalizing it, which became effective July 1, 1941 (62 O.S. 1941 §8.1 et seq.). The contract herein was entered into October 15, 1932, and the services of petitioner were completed October 15, 1940. Because the litigation and plaintiff's services therein extended over an eight-year period and because the payment of any fee to plaintiff was dependent upon the successful conclusion of that litigation, the amount involved in the instant case could not be considered as an expenditure or obligation of any one fiscal year.

The petitioner is entitled to payment of the full amount of the appropriation involved herein and the respondents should perform those duties necessary to effect such payment.

The peremptory writ is ordered issued.

ARNOLD, C. J., HALLEY, V. C. J., and JOHNSON and BINGAMAN, JJ., concur. WELCH, CORN, GIBSON, and O'NEAL, JJ., dissent.

WELCH, J. (dissenting). I agree with the rules of law stated in the syllabus, and with the various statements in the majority opinion as to the general authority of the Governor to employ counsel to represent the interest of the state in proper cases. I also agree that generally the Legislature may appropriate money to pay for such services.

I think, however, that the Governor must have and does have the authority in employing attorneys, to contract with them, limiting the amount of fee to be collected, and that the Legislature does not have power to appropriate money and pay an attorney's fee over and above the fee properly provided for in such a contract of employment. The majority opinion pays scant attention to the contract in this case which limits the fee to be collected. The majority opinion does this upon a conclusion that there was "mutual misunderstanding on the part of the contracting parties. . . ." There is no pleading by either party, and of course no evidence, of any such "mutual misunderstanding," or of any misunderstanding by either party. The contract is plain and unambiguous and I am not able to understand how the majority can either assume or conclude that there was any such "mutual misunderstanding," or any misunderstanding at all by either one of these two original contracting parties. I think the payment of this attorney's fee should be based upon the contract of appointment and employment or more nearly in line with the provision set out in the contract.

The majority opinion implies that the fee contracted to be received would not

even be binding as a limitation upon the power of the Legislature, and that in any event and regardless of the employment contract the Legislature might fix a fee even in excess of the amount contracted to be received and accepted as satisfactory compensation. Perhaps the majority opinion does not intend to so hold, but insofar as it implies such a legal philosophy I must disagree, and express these dissenting views. Pertinent parts of the contract which I construe to be a legal limitation on the amount of attorney's fee which may be constitutionally paid are cited at 192 Okla. 204, 134 P. 2d 337.

To the extent that any legislative appropriation would pay any fee in excess of the sum the attorney had solemnly agreed to accept as ample and full compensation, that legislation and appropriation would constitute a gift of public funds. Such a gift would be prohibited by the Constitution and the several decisions of this court on the point.

I am authorized to say that GIBSON and O'NEAL, JJ., concur in these views.