1988 OK 44

**TULSA COUNTY DEPUTY SHERIFF'S FRATERNAL ORDER OF POLICE, LODGE NUMBER 188, Myra Kay Eberle, Tommy M. Fike, Laura McIntire, Russell Frank Porter, John Edward Schonholtz and Debbie Ann Walters, Appellants/Counter Appellees,**

v.

**BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY and Tulsa County Criminal Justice Authority, Appellees/Counter Appellants.**

Nos. 90930, 90935.

Supreme Court of Oklahoma.

May 28, 1998.

Rehearing Denied June 30, 1998.

James Thomas, Tulsa, Oklahoma, For Appellants/Counter Appellees, Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge Number 188.

Thomas D. Frasier, Steven Hickman, Frasier, Frasier & Hickman, Tulsa, Oklahoma, For Appellants/Counter Appellees, Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge Number 188.

Michael H. Thompson, Oklahoma City, Oklahoma, For Appellants/Counter Appellees.

C.S. Lewis, III, Gretchen M. Schilling, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, Oklahoma, For Appellees/Counter Appellants, Tulsa County Criminal Justice Authority.

Dick A. Blakeley, William D. Lafortune District Attorney, Tulsa, Oklahoma, For Appellees/Counter Appellants, Board of County Commissioners of Tulsa County. Frederick S. Esser, Washington County District Attorney, Bartlesville, Oklahoma, For Amicus Curiae, Stanley Glanz, Sheriff of Tulsa County.

Reuben Davis, Frederic N. Schneider, III, Mary L. Lohrke, Boone, Smith Davis Hurst & Dickman, Tulsa, Oklahoma, For Amicus Curiae, The Oklahoma Sheriff's Association.

HODGES, Justice.

¶ 1 This appeal from summary judgment raises two issues. First, was the Tulsa County Criminal Justice Authority created under the proper statutes? Second, are the delegations by which a private entity will be authorized to maintain and operate the city-county jail system unconstitutional? The Tulsa County Criminal Justice Authority was created under the proper statute. As to the second issue, this Court will not address the delegation issues in advance of the trial court's determination of those issues.

¶ 2 Tulsa County currently operates and maintains a consolidated city-county jail system located in the Tulsa County Courthouse, the Tulsa Police/Municipal Court Building, and the Adult Detention Center which is owned by the City of Tulsa. Seventeen police agencies place prisoners in the jail and the federal government has a contractual right to keep prisoners there. The system is operated and maintained by the Tulsa County Sheriff. The system has a history of disrepair and overcrowding. However, in 1987 and again in 1989, voters refused to approve property tax increases to build a new jail.

¶ 3 In 1994, the United States Justice Department investigated the jail system and found that the condition of the jail violated the constitutional rights of prisoners and detainees. Tulsa County negotiated a settlement whereby it agreed to build a new jail by November, 1998, to be occupied by February of 1999.

¶ 4 Tulsa County officials began an intense media campaign to solicit support for a sales tax to build a new jail. A public trust called the Tulsa County Criminal Justice Association (TCCJA) was proposed to administer the sales tax proceeds and to provide for the construction and operation of the new jail. Initially, the TCCJA was to have five trustees, the three County Commissioners and two Mayors. But to muster support for the sales tax, membership was expanded to include the three County Commissioners and four Mayors. The sheriff was not included. Support for the sales tax came from all cities in Tulsa County. On September 12, 1995, voters approved the following sales tax Proposition:

## PROPOSITION NO. 1

Shall the County of Tulsa, Oklahoma, by its Board of County Commissioners, levy and collect a five-twelfths percent (5/12%) sales tax to be administered by the Tulsa County Criminal Justice Authority for the purpose of acquiring a site and creating, furnishing, equipping, operating, maintaining, remodeling and repairing a County Jail and other detention facilities owned or operated by Tulsa County and/or to be applied or pledged toward the payment of principal and interest on any indebtedness, incurred by or on behalf of Tulsa County for such purpose, commencing October 1, 1995, and continuing thereafter and reducing to one-quarter percent (1/4%) on the date of payment or provision for payment of all indebtedness, incurred by or on behalf of Tulsa County for such purpose?

## PROPOSITION NO. 2

Shall the County of Tulsa, Oklahoma, by its Board of County Commissioners, levy and collect a temporary one-twelfth percent (1/12%) sales tax to be administered by the Tulsa County Criminal Justice Authority for early intervention and delinquency prevention programs commencing October 1, 1995, and continuing thereafter until October 1, 2001?

¶ 5   On October 20, 1995, the Tulsa County Commissioners and the Mayor of Tulsa executed an Amended and Restated Declaration of Trust which created the multiple beneficiary city-county TCCJA.   Revenue bonds were sold in February, 1997.   On September 5, 1997, the TCCJA members voted to negotiate a contract with Correction Corporation of America (CCA) for operation of the new jail.   Those negotiations are presently ongoing.

¶ 6   The Tulsa County Sheriff's Fraternal Order of Police, Lodge Number 188, and taxpayers (Opponents) brought an action in the district court seeking a declaratory judgment that the delegation to a private entity is unconstitutional and that the TCCJA was created under the wrong statutory provisions.   Opponents also sought an injunction against the County Commissioners and the TCCJA (Proponents) from taking further action towards privatization.

¶ 7   On cross motions for summary judgment, the trial court held that the TCCJA was not properly created to operate the Tulsa County jail and that it was therefore unnecessary to decide the delegation issues.

¶ 8   Each side appealed from the summary judgment of the trial court.   The two appeals have been consolidated.   The Tulsa County Sheriff filed an amicus curiae brief in this matter and participated in oral argument.

### I.   Public Trust Issue

■   ¶ 9   The issue is whether the TCCJA was formed under the proper trust provision. In 1994, the Legislature authorized county jail trust authorities at section 904.1 of title 19.   However, the TCCJA was formed under the general public trust provisions of title 60, section 176.   One important difference in the two forms of trust involves the membership of the board of directors.

¶ 10   The TCCJA, as formed under title 60, is directed by the three Tulsa County Commissioners and four Tulsa area mayors. Thus, majority control of the board is vested in city officials.   A title 19 jail trust authority, however, has a five-member board including "the chairman of the board of county commissioners, the county sheriff and three appointed members who are residents of the county and who are not elected officials." Okla. Stat. tit. 19, § 904.2.   Each resident member is appointed by a different county commissioner.

¶ 11   Voters were made aware of the composition of the TCCJA's board.   In an open letter, published in Tulsa area papers, the County Commissioners and eight area mayors promised: "The sales tax money will be managed by a Criminal Justice Authority, made up of the three Tulsa County Commissioners, the Mayor of the City of Tulsa and mayors of three other cities in the county, giving the authority broadbased oversight to protect the interests of all citizens."   The quoted sentence appears in large type.

¶ 12   There is no question that the TCCJA does not meet the board of directors requirement of title 19, section 904.2.   That was the holding of the trial court which found that section 904.2 was a specific directive which controlled over the general provision found in title 60.   The question, however, becomes whether compliance with the trust authority provisions was required.

■   ¶ 13   "Under Oklahoma law, where two statutes are in conflict, a special statute will control and act as an exception to a statute of general applicability." *Duncan v. City of Nichols Hills,* 913 P.2d 1303, 1310 (Okla.1996).   However, this rule applies only when the special statute "clearly includes the matter in controversy." *Carter v. City of Oklahoma City,* 862 P.2d 77, 80 (Okla.1993).

¶ 14   The matter in controversy here is the formation of a multiple beneficiary trust with the authority to issue revenue bonds. While section 178 of title 60 specifically authorizes such a trust, sections 904.1 thru 904.10 of title 19 do not.   They neither authorize the issuance of bonds, nor do they specifically authorize the multiple city and county beneficiary arrangement found in the TCCJA.   Thus, the title 19 provisions do not "clearly include" the TCCJA so to constitute a special provision.

■   ¶ 15   Even if the title 19 provisions did apply to the TCCJA, those provisions merely provide an alternative to a title 60

trust. In *Board of County Commissioners v. Warram*, 285 P.2d 1034 (Okla.1955), the Oklahoma County Utility Services Authority (OCUSA) was formed under the public trust provisions of title 60 to provide water and utility services to the unincorporated areas of Oklahoma County. Shortly thereafter, the OCUSA issued revenue bonds to purchase privately owned water properties. The *Warram* court recognized the existence of specific legislation which provided for the creation of county water improvement districts under title 82, sections 771 thru 856K. Nevertheless, it validated the title 60 OCUSA trust reasoning:

> We think that when the Legislature assigned a field of governmental action to a State subdivision, here a county, as has been done as to fire protection, water distribution and sewerage, but has provided only a single method for the county to perform such functions, the character of the functions is not limited to the single method provided, but that the Legislature may properly provide for other methods of attaining the same purposes.

*Id.* at 1040.

¶ 16    Under the teaching of Warram, Tulsa County and its cities were not limited to a single method for providing jail functions. They were free to utilize any applicable method provided by the Legislature, including the creation of a public trust under title 60, section 176.

¶ 17    The TCCJA was properly created under title 60. The trial court erred in holding that it was not.

## II.   Delegation Issues

¶ 18    The trial court found it unnecessary to rule on the issues surrounding a series of delegations by which the operation and maintenance of the jail system will be placed in the hands of a private for-profit corrections corporation. "An appellate court will not make first-instance determinations of law or fact." *Nelson v. Pollay*, 916 P.2d 1369, 1376 (Okla.1996). "When necessary findings of fact and conclusions of law are absent, the case must be remanded with directions that they be made by the trial court." *Id.* at 1376n. 35 (citations omitted).

¶ 19    No conclusion of law has been reached concerning the delegation issues. On remand, the trial court is directed to rule on the delegation issues which have been presented to it.

TRIAL COURT REVERSED; CAUSE REMANDED WITH DIRECTIONS.

¶ 20    KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

¶ 21    WILSON, J., concur in part; dissent in part.