OSCN Found Document:Question Submitted by: The Honorable Steve Kunzweiler, District Attorney, District 14

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 Question Submitted by: The Honorable Steve Kunzweiler, District Attorney, District 14
2015 OK AG 4
Decided: 06/25/2015
Oklahoma Attorney General Opinions
Cite as: 2015 OK AG 4, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask the following question: 
May sales tax revenue raised for the purposes of "operating" a county jail be used for the day-to-day functions required or permitted by statute or regulation to operate a working jail?
I.
Background
¶1 Your question centers upon the uses for which the proceeds of a county sales tax approved for the express purpose of "operating" a county jail may be lawfully spent. Your question is based upon concerns that arose from conclusions reached by the Attorney General in a recent Opinion regarding a different county sales tax approved under a much different county sales tax proposition. See A.G. Opin. 2014-15, at 87. 
¶2 A county is an involuntary political subdivision of the State without inherent powers. Johnston v. Conner, 1951 OK 262, ¶ 7, 236 P.2d 987, 989; Herndon v. Anderson, 1933 OK 490, ¶ 16, 25 P.2d 326, 329; A.G. Opin. 2003-29, at 166 (quoting Johnston, 1951 OK 262, ¶ 7, 236 P.2d at 989). A county is subject to unqualified legislative control except as restrained by the Constitution:


A county being an involuntary, subordinate political subdivision of the state, created to aid in the administration of governmental affairs of said state, and possessed of a portion of the sovereignty, has no inherent powers but derives those powers solely from the state. All of the powers intrusted to it are the powers of the sovereignty which created it. Its duties are likewise the duties of the sovereignty.


Johnston, 1951 OK 262, ¶ 7, 236 P.2d at 989 (quoting Herndon, 1933 OK 490, ¶ 16, 25 P.2d at 329); A.G. Opin. 2003-29, at 166 (quoting Johnston, 1951 OK 262, ¶ 7, 236 P.2d at 989). And "'[c]ounties have only such authority as is granted by statute.' Tulsa Expo. & Fair Corp. v. Bd. of County Comm'rs, 1970 OK 67, ¶ 26, 468 P.2d 501, 507. Thus, a county, being an involuntary political subdivision of the State without inherent powers of its own, derives all of its power from the State." A.G. Opin. 2014-12, at 73.
¶3 Every county in Oklahoma must either have a jail or, at county expense, "have access" to a jail located in another county or a jail operated by a private contractor. 57 O.S.2011, § 41. In counties operating a jail: 


[t]he sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable.


19 O.S.2011, § 513. As shown below, the statutes and regulations governing the operation of county jails reflect the fact that county jails are prisons where "persons" are lawfully detained and confined. 57 O.S.2011, § 42. The Oklahoma State Department of Health is authorized to promulgate standards for the operation of county jails according to certain criteria provided by statute, and is required to inspect the jails at least one time each year to ensure compliance therewith. 74 O.S.Supp.2014, § 192(A). Extensive regulations applicable to the operation of county jails have been put into place by the Oklahoma State Department of Health. See OAC 301:670-5-1 - 670-5-11.[1] Counties must conform operation of the jail "in all respects" to these rules and directions:


The sheriff, or such person designated by law in his place, shall have charge of the county jail of his county and of all persons by law confined therein, and such sheriff or other officer is hereby required to conform, in all respects, to the rules and directions promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes and of the district judge and communicated to him by the proper authority.


57 O.S.2011, § 47 (emphasis added). Jailers must be trained in accordance with standards set forth by the Oklahoma State Department of Health and may not be permitted to supervise jail inmates if the jailer does not meet such standards. 19 O.S.2011, § 513.1. Statutorily, the county sheriff must also "provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners as specified by the standards promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes." 57 O.S.2011, § 52. And finally, jails that are operated by public trusts or private contractors must conform their operations to statutes and regulations governing jails operated by counties. 19 O.S.2011, § 744(A), (N); see Tulsa Cnty. Deputy Sheriff's Fraternal Order of Police v. Bd. of Cnty. Comm'rs, 2000 OK 2, ¶¶ 11-12, 995 P.2d 1124, at 1129 [hereinafter FOP II]. 
¶4 Conformity with laws and regulations governing the day-to-day operation of county jails obviously requires payment of all the costs associated with compliance thereto. Counties are authorized by statute to levy a sales tax not to exceed 2 percent upon the gross proceeds or gross receipts of all sales or services in the county upon which a consumer sales tax is also levied by the State, and subject to approval by the county's voters of the levy. 68 O.S.2011, 1370(A). The lawful use for the proceeds of the levied tax is subject to the limitations imposed by the Oklahoma Constitution, providing:


Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.


Okla. Const. art. X, § 19 (emphasis added). We now turn to resolve your specific question. 
II. 
Understood Within its Historical and Judicially Recognized Context, Use of the Special County Sales Tax Approved by a Majority of the Voters in 1995 for "Operation" of the Tulsa County Jail Includes All of the Jail's Required Day-to-Day Costs.
¶5 Your question centers upon a particular sales tax levied pursuant to Section 1370 and directed toward the operation of the Tulsa County jail. See 68 O.S.Supp.1994, § 1370(A).[2] This specific sales tax has been the subject of two published opinions of the Oklahoma Supreme Court. See Tulsa Cnty. Deputy Sheriff's Fraternal Order of Police v. Bd. of Cnty. Comm'rs, 1998 OK 44, 959 P.2d 979 [hereinafter FOP I,]; FOP II, 2000 OK 2, 995 P.2d 1124. While neither opinion specifically decided the precise issue posed in your question, both opinions address the reasons for the enactment of the county sales tax in question and also illuminate the proper purposes for the use of the sales tax revenue. 
¶6 The court in FOP I related the historical circumstances prompting the sales tax proposition:


Tulsa County currently operates and maintains a consolidated city-county jail system located in the Tulsa County Courthouse, the Tulsa Police/Municipal Court Building, and the Adult Detention Center which is owned by the City of Tulsa. . . . The system has a history of disrepair and overcrowding. However, in 1987 and again in 1989, voters refused to approve property tax increases to build a new jail.
In 1994, the United States Justice Department investigated the jail system and found that the condition of the jail violated the constitutional rights of prisoners and detainees. Tulsa County negotiated a settlement whereby it agreed to build a new jail by November, 1998, to be occupied by February of 1999. 
. . . On September 12, 1995, voters approved the following sales tax Proposition:


PROPOSITION NO. 1


Shall the County of Tulsa, Oklahoma, by its Board of County Commissioners, levy and collect a five-twelfths percent (5/12%) sales tax to be administered by the Tulsa County Criminal Justice Authority for the purpose of acquiring a site and creating, furnishing, equipping, operating, maintaining, remodeling and repairing a County Jail and other detention facilities owned or operated by Tulsa County and/or to be applied or pledged toward the payment of principal and interest on any indebtedness, incurred by or on behalf of Tulsa County for such purpose, commencing October 1, 1995, and continuing thereafter and reducing to one-quarter percent (1/4%) on the date of payment or provision for payment of all indebtedness, incurred by or on behalf of Tulsa County for such purpose?


FOP I, 1998 OK 44, ¶¶ 2-4, 959 P.2d, at 980 (emphasis added).[3] In addition to Proposition 1, the court also recognized the passage of a second, separate but contemporaneous sales tax proposition that was approved at the same time as Proposition 1, quoted above, that authorized an additional 1/12 percent sales tax for early intervention and delinquency prevention programs to be administered by the Tulsa County Criminal Justice Association ("TCCJA") for a period commencing October 1, 1995, through and until October 1, 2001. Id. ¶ 4; see also FOP II, 2000 OK 2, ¶¶ 2-4, 995 P.2d, at 1127. "Operating" the Tulsa County jail has always been one of the several stated and approved purposes distinctly specified for this county sales tax. 
¶7 When the Oklahoma Supreme Court visited the same matter again in FOP II, the court specifically characterized the sales tax authorized under Proposition No. 1 above to be "for the construction and operation of a new county jail." FOP II, ¶ 3, 995 P.2d, at 1127 (emphasis added). Further, the court was called upon to define what "operation" of a jail entailed.[4] It found:


Section 192 of title 74 requires certain standards for many areas of jail operations such as: admission and release procedures, security, sanitary conditions, diet, clothing, living space, discipline, prisoners' rights, staff training, safety, prisoner supervision and segregation of females, minors and the infirm. Under section 192 of title 74, the State Health Department is required to inspect county jails once a year and violations are to be reported to the district attorney. The Oklahoma Administrative Code, title 310, section 670, sets out additional standards for jail operations.


FOP II, ¶ 11, 995 P.2d, at 1129 (emphasis added). Accordingly, as previously interpreted by the Oklahoma Supreme Court, the Tulsa County jail's "operations" that are lawfully funded by the sales tax include all of the costs associated with compliance to statutory and administrative standards for "jail operations" that are applicable to a county sheriff, whether the jail is operated by the county sheriff, a public trust, or by a private entity.
III.
Approval by the County Voters of a Sales Tax for which "Operating" the County Jail was a Stated Purpose for the Use of the Tax Proceeds Includes All Compliance Costs Associated With the Statutes and Regulations Governing the Operation of the Jail.
¶8 Plainly the authorized uses for the proceeds of the tax submitted to Tulsa County's voters for their approval include: "operating . . . a County Jail and other detention facilities owned or operated by Tulsa County."[5] As shown above, lawfully "operating" the Tulsa county jail includes incurring all of the compliance costs associated with state statutes and regulations governing the lawful operation of county jails. As such, the proceeds of this sales tax may be employed to fund any or all of such costs. 
¶9 Further, as was noted above, the sales tax authorized for the funding of the operation of the Tulsa County jail was approved at the same time as was a separate proposition that was also approved by the voters for a 1/12 percent county sales tax, the proceeds of which were also to be administered by the TCCJA and used for the funding of "early intervention and [juvenile] delinquency prevention programs." See FOP I, ¶ 4, 959 P.2d, at 980. Plainly the proceeds of the Tulsa County jail sales tax could not be used for funding early intervention and juvenile delinquency prevention programs, nor could the proceeds of the sales tax for the early intervention and juvenile delinquency prevention programs be used for the funding of the operation of the Tulsa County jail, because under either scenario such use would be outside the specific but different uses approved by the voters for the proceeds of these taxes. See Okla.Const. art. X, § 19.
¶10 Lastly, as noted above, we have been informed that your question was prompted by A.G. Opinion 2014-15. That opinion dealt with the scope of the lawful use of county sales tax proceeds levied for the "financing, construction and equipping of a juvenile delinquents detention facility and juvenile justice facilities in Canadian County, including design, construction, expenses, operations, equipment and furnishings[,]" as proposed and approved in the ballot title considered by the voters of Canadian County. Canadian Cnty. Comm'rs. Res. No. 96-20 [emphasis added].[6] We found in A.G. Opinion 2014-15 that because the language of ballot title measures must be written in basic words without special meanings, ballot titles must be understood according to the plain, ordinary meaning of the words used in the ballot title. Since tax revenues levied for one purpose are constitutionally restricted from being used for any other purpose, see Okla.Const. art. X, § 19, the narrowly stated purpose for the Canadian County sales tax, as disclosed by the plain, ordinary meaning of the words used in the Canadian County sales tax proposition, restricted the use of the sales tax proceeds to funding only the "financing, construction and equipping of a juvenile delinquents detention facility and juvenile justice facilities," id.,[7] and did not authorize the use of such sales tax proceeds for non-facility costs such as the funding of juvenile programs using the sales tax proceeds.[8] Considering the narrow scope of the uses approved by the voters for the proceeds of the Canadian County sales tax, such proceeds could not be used in any portion for these programs any more than Tulsa County was authorized to use its approved jail tax to fund early intervention and juvenile delinquency prevention programs.
¶11 We must also observe that since the ballot title for the Canadian County referendum examined in A.G. Opinion 2014-15 sets forth the purpose for only that particular tax levy, neither it, nor A.G. Opinion 2014-15 should affect sales tax levies approved in other counties under other ballot proposals that likewise must be governed only by the purposes as set forth in the resolutions and ballot titles specifically appertaining to them.
Conclusion
¶12 Seen within its historical context, the overall reason and purpose for the Board of County Commissioners for Tulsa County submitting the county jail sales tax proposition for approval of the voters of Tulsa County was to replace existing jail facilities that were then being operated in a manner deemed constitutionally deficient to the rights of prisoners and detainees incarcerated therein with a new jail that could be legally operated. Also clear from these cases is that the TCCJA, the public trust created for and empowered to administer the sales tax authorized by the Tulsa County voters, is required by law to see that the sales tax proceeds it administers will be spent to "operate" the new jail in a manner consistent with all of Oklahoma's statutory and regulatory requirements governing jail operations.
¶13 It is reasonable to conclude that all expenditures required or allowed by law to "operate" the Tulsa County jail in conformity with the state statutes and regulatory requirements pertaining to the maintenance and operation of a county jail would be included within the meaning of "operating" as used in the sales tax proposition set forth above and would, within the contemplation of the board of county commissioners who referred the question to the registered voters and within the contemplation of the voters who approved the referred question, be included within the meaning of "operations" for which the sales tax was authorized.[9]


¶14 It is, therefore, the official Opinion of the Attorney General that your question should be answered in the affirmative:
Sales tax revenue raised for the stated purpose of "operating" a county jail may be used to fund the day-to-day functions required or permitted by statute or regulation to operate a working jail. 


E. SCOTT PRUITT
Attorney General of Oklahoma
CHARLES S. ROGERS
Senior Assistant Attorney General 
FOOTNOTES
[1] These regulations govern the procedures for jail inmate admission, release and records, OAC 310:670-5-1; procedures for the safety, security and control of staff, prisoners and visitors, OAC 310:670-5-2; procedures for the supervision of prisoners, OAC 310:670-5-3; procedures for prisoner rules and discipline, OAC 310:670-5-4; procedures for the classification and segregation of prisoners, OAC 310:670-5-5; procedures governing safety, sanitary and hygiene standards, OAC 310:670-5-6; procedures governing food services and dietary requirements for inmates, OAC 310:670-5-7; procedures for providing inmate medical care and health services, OAC 310:670-5-8; procedures for inmate mail and visitation, OAC 310:670-5-9; procedures governing staff training and development, OAC 310:670-5-10; and procedures governing operation of the jail's physical plant, OAC 310:670-5-11. 
[2] This version of Section 1370 governed substantive and procedural requirements for enactment of a county sales tax at the time the Tulsa County sales tax was referred and approved. 
[3] We are informed by your office that the amount authorized under Proposition I has, upon the payment of all funded indebtedness, been subsequently reduced by the terms of the proposition to the 1/4 percent level. We are also informed that this year the sales tax revenue will account for only $26 million of the $32 million required to run the jail, with the remainder coming from other revenue sources. 
[4] In response to a non-delegation argument, the court found that privatized jails and jails administered by sheriffs must operate according to the same general statutes and regulatory requirements. FOP II, ¶ 10, 995 P.2d, at 1129 
[5] Tulsa Cnty., Okla., Proposition No. 1 (Sep. 12, 1995). 
[6] County sales tax levies must be approved by a majority of the registered voters voting at an election called thereon. 68 O.S.2011, § 1370(A). 
[7] The later use of the word "operations" in the ballot title only referred back to and qualified the purpose for the use of the sales tax that plainly was confined to the "facilities" to be constructed and equipped. A.G. Opin. 2014-15, at 90-92. 
[8] We found that juvenile programs such as the operation of juvenile rehabilitation and education programs through truancy enforcement, the funding of an alternative school for Canadian County students who have been suspended from their home school, the funding of drug screening of children, the funding of substance abuse treatment nor juvenile drug court, the funding of programs for the supervision of visitation and child exchange between divorced parents, etc., were not within the scope of approved purposes for the sales tax. Id. at 92. 
[9] The funding priority over available county revenue that generally exists within the law regarding expenses pertaining to operating a county jail facility also supports this conclusion. See Smartt v. Bd. of Cnty. Comm'rs, 1917 OK 590, ¶ 20, 169 P. 1101, 1104 (finding that Okla.Const. art. X, § 26, otherwise restricting county expenditures to monies levied for the fiscal year did not bar a claim for the cost of feeding the jail prisoners though monies budgeted for that purpose had been exhausted); Protest of Kan. City S. Ry. Co., 1932 OK 328, ¶ 32, 11 P.2d 500, 510 (finding that the cost to heat the jail not barred by failure of budgeted funds), Hillcrest Med. Ctr. v. State ex rel. Dep't of Corr., 1983 OK 101, ¶ 16, 675 P.2d 432, 435 (covering medical expenses of persons in custody of county sheriff). Indeed, although the costs of jail operations is a matter of fiscal priority within the county budget, when appropriated funds prove insufficient, any appropriated funds not then encumbered must be re-appropriated as necessary to this purpose though such actions may reduce the non-priority operations of the county. See Protest of Cities Serv. Gas Co., 1933 OK 148, 19 P.2d 546, 547 (syllabus ¶¶ 4, 5). Given the constitutional fiscal budgeting priority of funding for county jail operations relating to the care of persons detained or confined in the county jail, it is reasonable to conclude that by providing for a perpetual 1/4 percent sales tax for the purpose, among others, of "operating" the jail, it was intended thereby to produce a substantial revenue stream that would be available to support the day-to-day cost of care and custody of the jail's inmates, if for no other reason than to protect the rest of the county budget from reduction lest the cost of jail operations exceed budgeted amounts. 




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1917 OK 590, 169 P. 1101, 67 Okla. 141, SMARTT v. BOARD OF COUNTY COM'RS OF CRAIG COUNTY
Discussed
 1932 OK 328, 11 P.2d 500, 157 Okla. 246, PROTEST OF KANSAS CITY SOUTHERN RY. CO.
Discussed
 1933 OK 148, 19 P.2d 546, 162 Okla. 131, PROTEST OF CITIES SERVICE GAS CO. et al.
Discussed
 1933 OK 490, 25 P.2d 326, 165 Okla. 104, HERNDON Judge v. ANDERSON et al.
Discussed at Length
 1970 OK 67, 468 P.2d 501, TULSA EXPOSITION & FAIR CORP. v. BD. OF CO. COM'RS
Discussed
 2000 OK 2, 995 P.2d 1124, 71 OBJ 111, Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co.
Discussed at Length
 1951 OK 262, 236 P.2d 987, 205 Okla. 233, JOHNSTON v. CONNER
Discussed at Length
 1998 OK 44, 959 P.2d 979, 69 OBJ 2025, TULSA COUNTY DEPUTY SHERIFF'S F.O.P. v. BOARD OF COUNTY COMMISSIONERS
Discussed at Length
 1983 OK 101, 675 P.2d 432, Hillcrest Medical Center v. State ex rel. Dept. of Corrections
Discussed
Title 19. Counties and County Officers
 Cite
Name
Level

 19 O.S. 513.1, Training for Jailers in Accordance with Jail Standards
Cited
 19 O.S. 513, Sheriff to Have Charge and Custody of Jail
Cited
 19 O.S. 744, Authority to Use of Private Prison Contractors
Cited
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 41, Establishment or Access to Jail
Cited
 57 O.S. 42, Common Jails Used as Prisons - When Appropriate
Cited
 57 O.S. 47, Sheriff to Have Charge of the Jail
Cited
 57 O.S. 52, Sheriff to Provide Board and Necessary Articles - Compensation
Cited
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 1370, County Sales Tax - Exemptions - Purpose - Duration - County Sales Tax Revolving Fund
Discussed
Title 74. State Government
 Cite
Name
Level

 74 O.S. 192, Inspection of City and County Jails - Standards
Cited